# UNITED STATES *v.* BITTER ROOT DEVELOPMENT COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 223.    Argued January 8, 9, 1906.—Decided February 19, 1906.

Notwithstanding averments in the bill of fraud, conspiracy and violation of trust, if the action is really one of trespass or trover to recover damages for wrongful cutting and conversion of timber from complainant's lands, and there is no question of defendant's financial responsibility, and the recovery of a money judgment and not of specific property is sought, complainant's remedy at law is adequate and equity has no jurisdiction; nor can equity take jurisdiction merely because of the difficulty of proving the case on account of various devices alleged to have been used by defendants, or because the principal defendant is an executor of a party, whose estate is solvent, alleged to have been the chief wrongdoer.

Complainant, in an action at law of this nature, is entitled to the same inspection of books and papers that he could have in a suit in equity.

The holder of permits to cut timber from certain specified government lands, who wilfully and fraudulently cuts from other lands, is not a trustee *ex maleficio* as to timber wrongfully cut, but a mere trespasser and liable for damages in action at law, and equity has no jurisdiction either on the ground of trusteeship or accounting.

This court cannot take judicial notice of the contents of permits to cut timber, which are issued in different forms and subject to the discretion of the Department giving them.

Prevention of multiplicity of suits is not a ground for equity jurisdiction if all persons must be made parties, whether the suit be at law or in equity, and where a class does not exist of which a few can be made defendants as representatives thereof.

THE appellant filed this bill of complaint in the Circuit Court of the United States for the District of Montana, on the equity side of the court, for the purpose of recovering from the defendants the value of certain timber, alleged to have been wrongfully cut and taken by the defendants and converted to their own use from the public lands belonging to the complainant in the State of Montana. The defendants, those of them who appeared, demurred to the bill on the ground, among others, that a court of equity had no jurisdiction over the

cause of action set up in the bill, for the reason that complainant had a plain, full, and adequate remedy at law therefor. The Circuit Court sustained the demurrer and granted leave to the complainant to amend, but the complainant elected to stand by the bill, and the same was thereupon, finally, dismissed. The case was taken to the Circuit Court of Appeals for the Ninth Circuit, where the judgment of the Circuit Court was affirmed, 133 Fed. Rep. 274, and the complainant has appealed here.

(It appears from the return of the marshal that, after diligent search, no service of process could be made on the defendants, Bitter Root Development Company, Anaconda Mining Company and Anaconda Copper Company [corporations], as they could not be found.)

The bill alleged that on April 1, 1888, the complainant was, and at the time of the filing of the bill continued to be, the owner in fee and in the possession of certain lands in Montana, described in the bill. Description of the lands from which the timber was cut and carried off was given at great length and a large number of sections of land were included therein:

"2. Your orator further shows that on the day and year last aforesaid, on these vast tracts of land there were then growing and standing great forests of pine, fir, and other kinds of trees of various dimensions, fit to manufacture into lumber for mining, commercial, and all other purposes for which lumber is used; that said forests were of great value, to wit, of the value of two million dollars ($2,000,000) and upwards, the exact value thereof being to your orator unknown; that these forests and the land upon which they were growing and standing were the absolute property of the complainant, the United States of America, and was a portion of its public domain.

"3. Your orator further shows that on this the day of filing its bill of complaint in this court the lands above described have for the most part been stripped of the pine and other trees and timber that were standing and growing upon them as aforesaid, and, except very small portions thereof, were so denuded without license, authority or permission of the United States

or any one authorized to represent the complainant; and this was done in violation of its laws, both civil and criminal, and thereby and in consequence of said spoliation the complainant has lost millions of dollars' worth of its property under circumstances named in the succeeding paragraphs of this bill of complaint.

"4. Your orator further shows that one Marcus Daly, who is now dead, but who was on the date and year aforesaid a citizen of the State of Montana, and a resident thereof, well knowing of the location of these lands, their accessibility, and the great value of the timber then growing thereon, did, on or about the 1st day of January, 1890, determine that he would convert and appropriate to his own use all of the merchantable and marketable timber growing and standing thereon, without buying said timber or obtaining any right or authority, except as hereinafter stated, from your orator, the United States of America. That in order to more effectually carry out these designs and purposes, to conceal his identity, to enrich himself individually, to escape personal liability, and to better deceive the public and the lawful officers and agents of the complainant, he determined that he would organize a corporation under the laws of the State of Montana; and for that purpose the said Daly called to his aid and assistance certain other persons, namely, John R. Toole, William Toole, William W. Dixon, James W. Hamilton, Moses Kirkpatrick, William Scallon, Malcom B. Bromley, Michael Donohue, William L. Hoag, Daniel J. Hennessy and Joseph V. Long, and by conspiracy and confederation with said parties, and in pursuance of such fraudulent purpose as aforesaid, they organized, on or about the 12th day of August, 1890, the Bitter Root Development Company, the defendant. In its articles of incorporation, which were duly filed with the Secretary of State of Montana, said John R. Toole, William Toole, and James W. Hamilton were named as incorporators, and James W. Hamilton, William Toole, Daniel J. Hennessy, John R. Toole, and William W. Dixon were named as trustees to manage the affairs of the com-

pany for the first three months of its existence, and the town of Hamilton, in said State, was named as the principal office of said corporation. The capital stock of said corporation was fixed at the sum of three hundred thousand dollars ($300,000.00), divided into one hundred thousand shares, of the par value of three dollars ($3.00) per share.

"5. Your orator further shows that said incorporators and trustees had but a nominal interest in said incorporation, but certain of them were agents, and others, attorneys of said Marcus Daly, and as such conspired with him as to the manner and means by which his said purpose to denude said lands of your orator could be best carried out. In pursuance of such conspiracy it was necessary that a certain number should subscribe for stock in said corporation, which was done, but all of said shares were in fact subscribed for the use of and controlled by said Marcus Daly. Your orator charges that not only in the formation of said corporation and other corporations to be hereinafter named said John R. Toole, William Toole, William W. Dixon, James W. Hamilton, Moses Kirkpatrick, William Scallon, Malcolm B. Bromley, Michael Donohue, William L. Hoag, Daniel J. Hennessy, and Joseph V. Long aided and assisted said Marcus Daly, but in many other ways up to the time of his death they engaged with him in the work of spoliation, which, in pursuance of such conspiracy, had been planned and was later carried out as hereinafter particularly described; and said parties other than Daly participated in the profits thereof, but just how and to what extent is to your orator unknown; and your orator shows that such of the above as are not made defendants herein are either dead, outside of the jurisdiction of this court, or have no estate.

"6. Your orator further shows that at once on the organization of this corporation, and under the corporate name thereof, said parties heretofore named commenced the work of cutting and carrying away from said lands the trees and timber then growing and standing thereon, using at first in their operations several portable sawmills, but later, on or about the year 1892,

a large lumber and sawmill was erected at the town of Hamilton or Bitter Root River, in close proximity to a portion of the lands above described and the timber growing thereon. The work of cutting, hauling, transporting to the river, and driving the timber to said mill and manufacturing the same into lumber was prosecuted with great and unremitting industry for several years thereafter, to the great profit and advantage of the said conspirators and to the great loss of your orator.

"7. Your orator further shows that not only at the time of the organization of said corporation, but at all times while it was doing business, its officers, directors, trustees and stockholders acted for and in behalf of said Marcus Daly as his agents, and had knowledge of its principal operations, and well knew that the logs that were being brought to its mill and converted into lumber were taken, without right or authority, from the public domain of your orator, and that they had no legal right or title to the same, except as to a small fraction thereof, as hereinafter stated.

"8. Your orator further shows that in pursuance of such fraudulent conspiracy, for the purpose of carrying out the same, and in order to conceal such action, said Marcus Daly, aided by the other parties and as aforesaid, under the name of the Bitter Root Development Company, did at certain times during the several years of said depredations apply to and obtain from the lawful agents of your orator licenses to cut upon certain small portions of the tracts above described, and under cover of such permits said conspirators not only cut, carried away and manufactured the timber growing upon the lands included in such licenses, but well knowing that such permits gave them no right or authority to enter upon other lands of your orator, they willfully and fraudulently entered upon large tracts of lands adjacent thereto, and cut, carried away, drove and manufactured the timber growing thereon, and afterwards sold the lumber and timber to persons and corporations to your orator unknown and known only to Marcus Daly, his agents and the officers of said Bitter Root Development Company, and appro-

priated the proceeds of such sales to their own use, but just when such sales were made, just how much the proceeds, to whom beside said Marcus Daly such proceeds were paid, in what proportion, in what way, and at what particular time, it is impossible for your orator to say, as all books of account, of every kind and character, were then and are now in their possession, under their control, or with their assigns.

"9. Your orator further shows that in pursuance of said conspiracy, and in the execution thereof, in order to more effectually conceal the same from your orator, its officers and agents, the said Marcus Daly and the other parties before mentioned engaged the services of a large number of men, falsely representing that they had authority from your orator to cut the growing timber on tracts of land not included in any license, and made contracts with such men, by the terms of which the said conspirators were to pay a certain amount for logs delivered at the river bank by the parties so employed, by reason of which representations and contracts a large number of men were induced to cut down trees and haul them as logs to the river bank, and transport said logs to the company's mill at Hamilton, and thereby innocently aided the conspirators in their unlawful acts and enabled them to successfully prosecute the same.

"10. Your orator further shows that in pursuance of said conspiracy, and in the execution thereof, the said Daly and his associates, acting through and under the corporate name of the defendant, Bitter Root Development Company, entered into other contracts or agreements with other parties, namely, Kendall Brothers, Harper Brothers, G. L. Shook, William Toole, Andrew Kennedy, D. V. Bean, John Ailport and divers other persons to your orator unknown, by the terms of which they were to be paid specified prices per thousand feet board measure for logs delivered at the sawmill at Hamilton, both parties to said agreements well knowing at the time that the timber belonged to your orator and was to be unlawfully cut and removed. Said contractors, so called, acting for and in

behalf of said Marcus Daly and his said confederates under the name of the Bitter Root Development Company, during the year 1891 and for several years next thereafter, willfully trespassed upon the hereinbefore-described lands of the complainant, cutting millions of feet of logs and hauling them to the Bitter Root River and thence to the mill of the defendant, Bitter Root Development Company, at Hamilton, where they were converted into lumber and sold to the general public, and the proceeds thereof appropriated in large part by said Marcus Daly and the balance by his associates in said conspiracy, but just how much, and in what proportion, your orator, for the reasons above stated, is unable to say.

"11. Your orator further shows that the said Marcus Daly and his associates, in further execution of said conspiracy, organized other corporations for the purpose of concealing their illegal acts and complicating and confusing the situation, so as to make detection and proof of the same difficult, if not impossible. One of these schemes was as follows: On or about the 14th day of January, 1891, they organized a corporation known as the Anaconda Mining Company, with an organized capital stock of $12,500,000, divided into 500,000 shares of the par value of $25 per share; that within less than one year thereafter, namely, on the 5th day of December, 1891, a stockholders' meeting was held in the city of Butte, Montana, and at said meeting the capital stock of said corporation was increased to twenty-five million dollars ($25,000,000.00) and the shares thereof increased to one million (1,000,000) shares; that at said stockholders' meeting it appeared that no one of the incorporators or the trustees that were named at the time of its incorporation a few months before had any substantial interest therein; and later, namely, on the 31st day of December, another meeting of said stockholders was held, at which time it was voted to extend the term of existence of said corporation for forty years from the date of its original incorporation, and at that meeting it appeared that Marcus Daly, either in his own person or as trustee or as a proxy, controlled nearly seven

hundred thousand (700,000) shares of the million shares of the capital stock of said company, and in less than six months thereafter the capital stock was reduced from twenty-five million dollars ($25,000,000.00) to one million dollars ($1,000,000.00), and the shares from one million to forty thousand (40,000).

"12. Your orator further shows that in furtherance of the conspiracy aforesaid the said Marcus Daly on the 27th day of April, 1894, through his agents procured to be conveyed unto himself all of the property of said Bitter Root Development Company, receiving a deed from said Bitter Root Development Company, executed by William Toole as its president and Joseph Kerrigan as its secretary, which said deed was duly recorded on page 302 of book 16 in the proper office for the recording of deeds in the county of Ravalli, State of Montana. In said deed appear these words: 'The Bitter Root Development Company, for and in consideration of one dollar, transfers all of its property of every kind and description, real and personal, timber lands, timber cutting privileges and rights, timber, logs, mills, water rights, and water ditches, flumes, pipe lines, and rights of way—in fact, everything belonging to the Bitter Root Development Company — to Marcus Daly.'

"Your orator further says that four days after so receiving this deed, namely, on the 1st day of May, 1894, said Marcus Daly deeded the same property to the other of his corporations, the above-named Anaconda Mining Company, for the express consideration of one million four hundred and forty-two thousand three hundred and seventy-nine dollars and forty-six cents ($1,442,379.46), which said deed was duly recorded in said book 16, on page 280. Your orator expressly charges that said Marcus Daly did in fact receive the consideration named in said deed, the whole thereof being directly the result of the spoliation of the lands of your orator as aforesaid, and that the moneys so received by him belonged in fact to your orator; but your orator charges on information that said Marcus Daly did not receive all of the same in cash, but a portion of same

was taken in stock in said Anaconda Mining Company, but just how much he received in cash and how much was carried over and appeared in stock of said company your orator is unable to state.

"13. Your orator further shows that in furtherance of the conspiracy aforesaid, said defendants, Moses Kirkpatrick, William Scallon, and Malcolm B. Bromley, acting for and in behalf of said Marcus Daly, on the 6th day of June, 1895, pursuant to and in conformity with the statutes of Montana relating to corporations for industrial and productive purposes, organized the Anaconda Copper Company, with an authorized capital stock of thirty million dollars ($30,000,000.00), divided into three hundred thousand (300,000) shares of the par value of one hundred dollars ($100.00) each, with an authorized term of existence of forty years, and the following-named persons were named as trustees for the first three months of its existence, to wit, Moses Kirkpatrick, William Scallon, Malcolm B. Bromley, Michael Donohue, William L. Hoag, Daniel J. Hennessy, and Joseph V. Long, with its principal office at Butte, Silverbow County, Montana.

"14. Your orator further shows that nine days thereafter the same persons, named as incorporators of the corporation last named, organized under the same law the defendant corporation, the Anaconda Copper Mining Company, with an authorized capital stock of thirty million dollars ($30,000,000.00), divided into one million two hundred thousand shares (1,200,000) of the par value of twenty-five dollars ($25.00) each, with the same seven trustees to manage the affairs of said corporation for the first three months of its existence, with its principal office at Anaconda, in said State.

"15. Your orator shows that in the execution of said conspiracy, and for the purpose of complicating the situation, said Marcus Daly, through his agents, did again, and within one year and twenty-nine days after having transferred his property to the Anaconda Mining Company, convey the identical property that was named in said deeds to the above-named

Anaconda Copper Mining Company for and in consideration of the sum of one dollar, the Anaconda Mining Company executing a deed through and by its president, W. W. Dixon, and its secretary, F. E. Sergeant, and said deed is recorded in the same book of records on page 441.

"16. Your orator further shows and charges that these several conveyances were made in the main in furtherance of said conspiracy, and in pursuance of a purpose to so complicate the situation as to make detection difficult, if not impossible. That the conveyance by the Bitter Root Development Company to said Marcus Daly, for one dollar, of all of its property was fraudulent, and that said Marcus Daly did, under the name of the Anaconda Mining Company, carry on the same work of spoliation of your orator's trees, timber, and lands, and that later, and from the time of the conveyance of all its corporate property to the Anaconda Copper Mining Company, he carried on the work under that name until the date of his death. That he continued to use the same means, the same mill at Hamilton, and the officers, directors, and stockholders of each of said corporations knew of the illegal work that had been done, and so knowing continued the same. And your orator expressly charges that all of the corporate assets of every kind and character of the Bitter Root Development Company either appeared in the stock of the other corporations or was appropriated by Marcus Daly and his assistants to their own use and benefit; but just how much was carried over in the said corporations, and how much was divided previous to the last deed named herein, and how much of the property of your orator was converted by said last-named company between the date of its organization and the death of said Marcus Daly hereinafter described, and how much thereof was appropriated by said company and how much by Daly and his associates, it is impossible for your orator, with the means at hand, to state.

"17. Your orator further shows that by reason of such spoliation, continued and carried on during the period of about

ten years, it has lost property of great value, to wit, of the value of two million dollars and upwards, and that Marcus Daly and the other defendants named herein occasioned this loss by willfully trespassing upon said lands of your orator, and without its consent, or the consent of any of its authorized officers, and in violation of its laws, both civil and criminal, appropriated and converted to their own use the trees and timber growing thereon. That said defendants, or some of them, have had at all times and now have possession of the sawmill at Hamilton, wherein the logs were converted into lumber, and they have received all the proceeds of said sales and divided the same among them; but by reason of the frauds practiced by said defendants, as aforesaid, and their acts performed for the express purpose of concealing from your orator the facts of the case by means of the formation and the dissolving and the reforming of corporations, and by reason of said defendants having possession of all books of account it is impossible for your orator to set forth to a greater extent the details of this conspiracy, or to show just when or by whom the particular acts of spoliation were performed, or just when and to whom the logs when manufactured into lumber were sold, or just when and by whom the proceeds thereof were obtained and when the same were divided.

"18. Your orator further shows that at the time that these trespasses were committed the territory on which the same took place was but sparsely settled, and was thousands of miles away from the seat of government, and it was impossible with the means that your orator had at hand to properly patrol and protect its domain from the willful trespasses of the defendants, and that the Government of the United States used such care in the protection thereof as it had the means to do. That the agents employed by your orator were misled by the defendants' assertion of ownership, as aforesaid; that the frauds and trespasses of the defendants, which have resulted in the denuding of these lands of your orator and in depriving your orator of property of the value of several millions of dollars,

were not discovered in their entirety until a comparatively short time ago.

"19. Your orator further shows that it has commenced several actions at law in this honorable court to recover the value of the timber heretofore taken by the defendants, or some of them, from the lands above particularly described, and that the same are now pending in this court, but that, by reason of the frauds and conspiracies above set forth and the complications which have resulted therefrom, no plain, adequate, and complete remedy can be given your orator by said actions at law, and your orator is only relievable in a court of equity, where matters of this kind are properly cognizable and relievable.

"20. Your orator further shows that Marcus Daly died in the city of New York on the 12th day of November, A. D. 1900; that at the time of his death he was a resident of the county of Deerlodge, State and District of Montana, and left an estate worth about $12,000,000, consisting of real and personal property located in said county and State and elsewhere, and your orator expressly charges that a large portion of said estate was the result of the proceeds of his illegal acts in his lifetime in trespassing upon the lands of your orator, as hereinbefore charged, and converting the proceeds of the sale of the timber, growing thereon to his own use and benefit; that in his lifetime he made and published his last will and testament, whereby he appointed the defendant, Margaret P. Daly, executrix thereof; that on the 14th day of February, A. D. 1901, at the city of Anaconda, said last will and testament was duly proved and duly admitted to probate in the District Court of the county of Deerlodge, District of Montana; that thereupon, on the 15th day of February, A. D. 1901, letters of administration were duly issued thereon to the said defendant, Margaret P. Daly, by the said court; that the said defendant, Margaret P. Daly, duly qualified and entered upon the discharge of her duties as executrix, and that the said letters testamentary have not been revoked and are now in full force and effect.

"21. Your orator further shows that the said Margaret P. Daly, under and by virtue of the terms of said will and, as the wife of said Marcus Daly, is now the owner of a large portion of his estate.

"In consideration whereof, and forasmuch as your orator is, for the reasons stated, remediless in the premises at and by the strict rule of the common law, and is only relievable in a court of equity where matters of this kind are properly cognizable and relievable, to the end that your orator may have that relief which it can only obtain in a court of equity; and that each one of the defendants above named may answer the premises, but not upon oath or affirmation, the benefit whereof is expressly waived by your orator, your orator prays the court as follows:

"First. That the defendant, Margaret P. Daly, both in her own person, and as executrix of the last will and testament of her husband, Marcus Daly, deceased, and each of the defendants above named, be decreed to hold in trust for the use and benefit of your orator so much of their estate, both real and personal, as shall have come to them, or either of them, directly from the proceeds of the conversion of the timber of your orator, as aforesaid.

"Second. That the complainant have and recover from Margaret P. Daly, both personally and as executrix, and from each of the other defendants above named, the profits, gains and advantages which the said defendants, or either of them, have received or made or which have arisen or accrued to them, or either of them, by reason of the willful trespasses upon the public domain of your orator, hereinbefore particularly described, and by reason of the fraudulent conversion of the trees and timber growing thereon, the logs had therefrom, and the lumber manufactured from the same.

"Third. That each of the defendants may make a full and true discovery and disclosure of and concerning the transactions and matters aforesaid, and that an accounting may be taken by and under the direction and decree of this honorable court

of all the dealings and transactions between your orator and the defendants. That on such accounting the defendants and each of them be required to produce all licenses, permits, and all other documents of every kind and character which they, or any of them, may have received from your orator, by which they, or any of them, claim, or claimed, the right to enter upon any of said lands of your orator and cut and remove the trees and timber then growing thereon.

"Fourth. That the defendants and each of them account for the number of logs received by them and manufactured into lumber at the sawmill at Hamilton, in said district, or at any other mill or mills owned or used by them in the manufacture of said logs into lumber, and also the gains, profits, and advantages which the said defendants, or either of them, or the estate of said Marcus Daly, have received or made, or which have arisen or accrued to them, or either of them, from trespassing upon the lands of the complainant, above described and set forth, and in converting to their own use and benefit the trees and timber growing thereon.

"Fifth. That the said defendants and each of them discover and set forth full, true, and particular accounts of all and every sum or sums of money received by them, or either of them, or by any person or persons by their, or either of their, order, or for their, or either of their, use, for or in respect of the said sale or sales of logs cut from said lands of said complainant, or the lumber obtained from said logs, and when and from whom each and every of such sums were, respectively, received, and how the same, respectively, have been applied or disposed of, and to show when and where the proceeds of said sales were invested by each of said defendants, and in what form of real or personal estate they now exist.

"Sixth. That the defendants, and each of them, may set forth a list or schedule and description of all books or account of every kind and character, and of all deeds, documents, letters, papers, or writings of every kind whatsoever relating to the matters aforesaid, or any of them, wherein or whereupon

there is any note, memorandum, or writing relating in any manner thereto, which are now or ever were in their, or either of their, possession or power, and more particularly described, which now are in their, or either of their, possession or power, and may deposit the same with the clerk of this court or with the standing master in chancery thereof for the purposes of inspection and examination by your orator, and for all other legitimate and usual purposes, in order that your orator may ascertain therefrom and thereby the particular facts and circumstances, which is absolutely necessary in order to enable your orator to obtain possession and knowledge of the details of this conspiracy; and that when such accounting shall be made, and it shall be ascertained that said defendants have received and taken into their possession money or other forms of property directly resulting from their participation in the conspiracy aforesaid, and in the spoliation of the lands of your orator as aforesaid, that this court shall decree that they pay the amount thereof, with interest from the date they so received the same, to your orator, with costs of this suit, and that your orator may have such other and further relief in the premises as the nature and the circumstances of this case may require and as may be agreeable to equity and good conscience.

"May it please the court to grant to your orator a writ of subpœna to be directed to the said Margaret P. Daly; Margaret P. Daly, as executrix of the last will and testament of Marcus Daly, deceased; Bitter Root Development Company, Anaconda Mining Company, Anaconda Copper Company, Anaconda Copper Mining Company, John R. Toole, William W. Dixon, William Scallon, Daniel J. Hennessy, thereby commanding them, and each of them, at a certain time, and under a certain penalty to be fixed, personally to appear before this honorable court, and then and there full, true, direct, and perfect answer to make to all and singular the premises, and to stand to, perform, and abide by such order, direction, and decree as may be made against them in the premises, as shall be meet and agreeable to equity, and your orator will ever pray."

VOL. CC—30

*Mr. Marsden C. Burch,* and *Mr. Fred A. Maynard,* Special Assistants to the Attorney General, with whom *The Solicitor General* was on the brief, for the United States:

The fundamental source of equity jurisdiction lies in the fraud which raises the constructive trust, but out of the situation naturally grows other remedial elements of jurisdiction of a court of equity, as discovery, accounting, settlement of an estate, prevention of multiplicity of suits, and the inadequacy of remedies at law.

The remedy at law, in order to exclude a concurrent remedy in equity, must be as complete, practicable, and efficient to the ends of justice and its prompt administration as the remedy in equity. *Boyce's Executors* v. *Grundy,* 3 Peters, 215; *Kilbourn* v. *Sunderland,* 130 U. S. 514; *Walla Walla Water Case,* 172 U. S. 112.

The application of this principle depends on the circumstances of each case. If the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. *Watson* v. *Sutherland,* 5 Wall. 74; *Payne* v. *Hook,* 7 Wall. 425; *Davis* v. *Wakelee,* 156 U. S. 680, 688; *Bank of Kentucky* v. *Stone,* 88 Fed. Rep. 391.

The mere fact that a legal remedy does exist is not a sufficient objection to resorting to the more convenient remedy in equity. 1 Cyc. of Law and Procedure, 421, and cases cited; *Russell* v. *Clark's Executors,* 7 Cr. 69, 89; *Wylie* v. *Coxe,* 15 How. 415, 420; *Jones* v. *Bolles,* 9 Wall. 364, 369; *Oelrichs* v. *Spain,* 15 Wall. 228.

As to the doctrine of constructive trust, by which one who has been defrauded of his property is treated in equity as a constructive *cestui que trust* and has the right to follow the property of which he has been defrauded into any form it may assume while in the hands of a party to the fraud, and to claim not only the trust *res* and its avails, but also any increase in value by reason of its transmutation of form, see *McMullen Lumber Company* v. *Strother,* 136 Fed. Rep. 295, 305; Perry on Trusts, 5th ed., § 166; *American Sugar Refining Co.* v.

*Fancher*, 145 N. Y. 552; *Newton* v. *Porter,* 5 Lansing, 416; *S. C.,* 69 N. Y. 133.

Equity only stops the pursuit when the means of ascertainment fails, or the rights of *bona fide* purchasers for value, without notice of the trust, have intervened. The relief can be adapted to the circumstances of the case, so as to protect the interests and rights of the true owner. *Lane* v. *Dighton,* Ambler, 409; *Mansell* v. *Mansell,* 2 P. Wms. 679; *Lench* v. *Lench,* 10 Ves. 511; *Lewis* v. *Madocks,* 17 Ves. 49; Perry on Trusts, § 829; Story's Eq., § 1258.

The aid of equity is not to be denied where a case is otherwise made simply because the defendant may be solvent, and simply because at the time the bill is filed the complainant may not have exact information as to the particular property sought to be charged. *Angle* v. *Chicago, St. Paul &c. Railway,* 151 U. S. 1; *Clews* v. *Jamieson,* 182 U. S. 461; Pomeroy's Eq. Jur., § 158.

The aid of equity may be invoked by reason of the fraud, misrepresentations and concealments practiced by the defendants. Equity has always had jurisdiction of fraud, misrepresentation and concealment and it does not depend upon discovery. *Jones* v. *Bolles,* 9 Wall. 369.

When an account cannot be justly and fairly taken at law, equity has always had jurisdiction. *Weymouth* v. *Boyer,* 1 Ves. Jr. 424; *Fowle* v. *Lawrason's Executors,* 5 Pet. 495; *Kilbourn* v. *Sunderland,* 130 U. S. 505, 515; 1 Story Eq. Jur. §§ 450–495; Pomeroy's Eq. Jur. § 1421; *Kirby* v. *Lake Shore Ry.,* 120 U. S. 130, 134. See also *Fenno* v. *Primrose,* 116 Fed. Rep. 49; *McMullen Lumber Co.* v. *Strother,* 136 Fed. Rep. 295.

The jurisdiction in equity should also be maintained to avoid a multiplicity of suits. *Bailey* v. *Tillinghast,* 99 Fed. Rep. 801; *DeForest* v. *Thompson,* 40 Fed. Rep. 375.

Where the bill is filed for the purpose of obtaining final relief, and where discovery is only incidental to that end, there can be no demurrer to the discovery only, for the reason that if

the discovery be material in support of the relief, and the complainants be entitled to the relief, the defendants must answer. *Ex parte Boyd,* 105 U. S. 647; *Brown* v. *McDonald,* 133 Fed. Rep. 897; *McMullen Lumber Co.* v. *Strother,* 136 Fed. Rep. 301; Bates Fed. Eq. Pro., pp. 128–130; *Gas Company* v. *Indianapolis,* 90 Fed. Rep. 197; *Rider* v. *Bateman,* 93 Fed. Rep. 31; Adams Eq. Jur., American ed., p. 444.

The examination of the officers of the defendant corporations as witnesses can in no event be the exact equivalent of a discovery by the corporations themselves under their corporate seals. *Bank* v. *Heilman,* 66 Fed. Rep. 184; Pom. Eq. Jur. § 199; *Evans* v. *Lancaster,* 64 Fed. Rep. 626; *McClaskey* v. *Barr,* 40 Fed. Rep. 559.

A court of equity will give effect to a demand against the estate of a deceased person in respect of a wrongful act done by him if the wrongful act has resulted in a benefit capable of being measured pecuniarily, if the demand is of such a nature as can be properly entertained by the court. *Bishop of Winchester* v. *Knight,* 1 P. Wms. 406; *Garth* v. *Cotton,* 1 Dickens, 183; *Marquis of Lansdowne* v. *Marchioness Dowager of Lansdowne,* 1 Madd. 116; *Phillipps* v. *Homfray,* 24 Ch. D. 439; *Lee* v. *Alston,* 1 Br. C. C. 194; *Monypenney* v. *Bristow,* 2 Russ. & M. 117; *Kennedy* v. *Creswell,* 101 U. S. 641, 645; Pomeroy Eq. Jur. § 156; *Beverly* v. *Rhodes,* 86 Virginia, 416.

A creditor not a citizen of the State of the decedent and his representative can proceed in the United States court against such representative to establish his claim therein by judgment or decree against the representative, but where the estate is being administered in a probate court, the Federal court, after adjudicating the claim, must remit the complainant to that court for distribution. *Byers* v. *McAuley,* 149 U. S. 608. See also *Martin* v. *Fort,* C. C. A. 83 Fed. Rep. 19, 22; *Wickham* v. *Hull,* 60 Fed. Rep. 329; *Hale* v. *Tyler,* 115 Fed. Rep. 838; *Walker* v. *Brown,* 165 U. S. 655.

*Mr. L. O. Evans,* with whom *Mr. A. J. Campbell, Mr. A. J.*

*Shores, Mr. C. F. Kelley* and *Mr. John F. Forbis* were on the brief, for appellees:

The complainant has a full, complete and adequate remedy at law in an action for damages. From the bill, and as claimed by appellant's counsel in the lower court, the inadequacy of the legal remedy consists only of the trouble and difficulty of unraveling before a jury the methods adopted by the appellees in creating corporations, transferring their property from one to the other, and in various other ways seeking to cover up their tracks; and that these devices could only be brought to light through an inspection of the books and records of the corporations, the contention of appellant being that it would not be so difficult to obtain and produce such complicated evidence in a suit in equity.

It is not a case where it is necessary to bring in a large number of defendants in order to adjust their rights among themselves as well as complainant's rights as to each of them. Under the allegations of this bill the defendants have no claims to be adjusted as between themselves. Under the bill they were wrongful trespassers, each and all of them, and each directly responsible for the injuries sustained.

These allegations do not lay the foundation for equitable relief. The remedy is at law. *Buzard* v. *Houston,* 119 U. S. 347; *Insurance Co.* v. *Bailey,* 13 Wall. 616; *Dowell* v. *Mitchell,* 105 U. S. 430; *Parkersburg* v. *Brown,* 106 U. S. 500; *Amber* v. *Choteau,* 107 U. S. 586; *Litchfield* v. *Ballou,* 114 U. S. 190; *Root* v. *Railway Co.,* 105 U. S. 189; *Thompson* v. *Allen County,* 115 U. S. 550; *Texas Pac. Ry. Co.* v. *Marshall,* 136 U. S. 393; *Hipp* v. *Babin,* 19 How. 278; *Dumont* v. *Fry,* 12 Fed. Rep. 21; *White* v. *Boyce,* 21 Fed. Rep. 228; *Alger* v. *Anderson,* 92 Fed. Rep. 696; Pomeroy on Equity Jurisprudence, 2d ed., vol. 1, § 178; Foster's Fed. Prac. § 12; Bates' Fed. Eq. Prac. § 188.

The complainant, presenting only an unliquidated claim for damages, has no standing in a court of equity. Before a party can come into a court of equity and seek relief he must reduce

his claim, whether it be for unliquidated damages or upon ·contract, to judgment.   In other words, his right to a recovery at all, whether it be in damages, for tort or a recovery upon contract, is a legal right, and one triable by jury.   And this right must be determined, and a judgment entered before he can seek the interposition of equity.  *Swan Land and Cattle Co.* v. *Frank*, 148 U. S. 603; *Cates* v. *Allen*, 149 U. S. 451; *Scott* v. *Necley*, 140 U. S. 106.

· Equity will follow and declare a trust in the property for the benefit of the real owner, where money or other property has been misapplied, · only in cases where the misapplication or misappropriation has been done by parties standing in some fiduciary relation to the wronged party.  .1 Perry on Trusts, 5th ed., § 128, p. 170, and cases cited; *Hawthorn* v. *Brown*, 3 Sneed (Tenn.), 462.

A bill for discovery alone cannot be maintained, and where the case is for relief and discovery, if the facts stated are insufficient to entitle the complainant to relief, the discovery must fail also.  ·*Preston* v. *Smith*, 26 Fed. Rep. 885; *Venner* v. *Atchison, T. & S. F. R. Co.*, 28 Fed. Rep. 581; *Everson* v· *Equitable Life Assur. Co.*, 68 Fed. Rep. 258, aff'd 71 Fed. Rep. 570; *Cecil Nat. Bank* v. *Thurber*, 59 Fed. Rep. 913; *McLanahan* v. *Davis*, 8 How. 170.

ˋ No equity jurisdiction arises by reason of the fact that Margaret P. Daly, appellee, is sued as executrix of the estate of Marcus Daly.   Even a creditor of an estate is not such a *cestui que trust* of the executrix as will enable him to maintain a bill in equity against the administrator for the establishing and payment of his ·claim,, merely on the ground of trust relation, in the absence of charges of fraud, maladministration or non-administration, on the part of the executrix.   *Walker* v. *Brown*, 58 Fed. Rep. 23, aff'd 63 Fed. Rep. 204.

. There is no relation between the complainant and the defendants, or any of them, which would support an action for accounting.   The defendants are charged in the bill as joint tort feasors.   Complainant's action upon the facts alleged is

for trespass and conversion or trover.   To maintain an action for accounting there must be between the parties either a privity, by contract or consent, or a privity in law.   Against a defeasor or mere wrongdoer no action for accounting will lie. The fact that the controversy embraces a series of torts, each of which would have to be proven by separate and distinct evidence, would not alter the nature of the case.   *Whitwell* v. *Willard,* 1 Met. (Mass.) 216; *Stringham* v. *Winnebago County,* 24 Wisconsin, 594; *Conklin* v. *Busch,* 8 Pa. St. 514; *Brinsmaid* v. *Mayo,* 9 Vermont, 30.

Complainant is not entitled to discovery under the allegations of the bill of complaint.

Since the adoption of § 858 *et seq.,* Rev. Stat., the parties having full remedy in the law action, and there being no necessity for a recourse to equity, the courts of chancery, and particularly the Federal courts have clearly established the doctrine that a bill for discovery alone cannot be maintained. *Safford* v. *Ensign Mfg. Co.,* 120 Fed. Rep. 480; *Brown* v. *Swan,* 10 Pet. (U. S. ) 497; *Rindskoff* v. *Platto,* 29 Fed. Rep. 130; *Preston* v. *Smith,* 26 Fed. Rep. 885; *United States* v. *McLaughlin,* 24 Fed. Rep. 823; *Ex parte Boyd,* 105 U. S. 647; *Paton* v. *Majors,* 46 Fed. Rep. 210; *Field* v. *Hastings & Bradley Co.,* 65 Fed. Rep. 279; *Home Ins. Co.* v. *Stanchfield,* 1 Dillon, 420; Fed. Case No. 6660.

The bill is so general, uncertain and indefinite that it presents no grounds for relief or discovery in equity.   It must state clearly and precisely the facts essential to make out its cause.   Story Eq. Pl. §§ 253, 257; *Tillinghast* v. *Chase,* 121 Fed. Rep. 435.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

Although there is a liberal use in the bill in this case of averments in regard to fraud, conspiracy and violation of trust, of which the pleader avers the defendants have been guilty,

in various ways, yet upon a careful examination of the plead-
ing itself, and the actual facts therein stated, we concur in the
view of the courts below, that the action is really nothing but
an action of trespass or trover to recover damages sustained
by the complainant by reason of the wrongful cutting, carrying
away and conversion of the property of the complainant, con-
sisting of the timber on the land mentioned in the bill; and for
the wrong thus done we think it clear that the complainant has
a plain, adequate and complete remedy at law, and conse-
quently the court has no jurisdiction of this bill in equity.

It is not necessary to cite many authorities for the proposi-
tion that where the main cause of action is of a legal nature,
equity has no jurisdiction, provided the complainant has a
full and adequate remedy at law for the wrongs complained of.
*Buzard* v. *Houston,* 119 U. S. 347; *Scott* v. *Neely,* 140 U. S.
106, 110. A mere charge of fraud does not give equity juris-
diction. *Buzard* v. *Houston, supra; Ambler* v. *Choteau,* 107
U. S. 586; *Safford* v. *Ensign Manufacturing Co.,* 120 Fed. Rep.
480, and cases cited in opinion. *Tyler* v. *Savage* 143 U. S. 79,
bears no resemblance to the case at bar. As the court there
said, there were in the case discovery, account, fraud, mis-
representation and concealment. There was no demurrer for
multifariousness, and no objection in the court below for want
of equity, and the case was not one of a plain defect in equity
jurisdiction. The suit was clearly one for equitable relief.

The principal ground upon which it is claimed that the rem-
edy at law is inadequate is really nothing more than a difficulty
in proving the case against the defendants. The bill shows
that whatever was done in the way of cutting the timber and
carrying it away was done by the defendants as tort feasors,
and the various devices alleged to have been resorted to by the
deceased, Daly, by way of organizing different corporations,.
in order to, as alleged, cover up his tracks and to render it
more difficult for the complainant to make proof of his action,
does not in the least tend to give a court of equity jurisdiction
on that account. It is simply a question of evidence to show

who did the wrong, and upon that point the fact could be ascertained as readily at law as in equity.

The complainant is entitled in an action at law to an inspection of the books and records of these various corporations, and it has the same power to obtain the facts therefrom in that action as it would have in this suit in equity.

The complainant contends that where property has been stolen, or obtained by fraud, equity recognizes the law to be that the property always belongs to the true owner, and therefore its proceeds must also belong to him and may be reclaimed in a suit in equity against the voluntary assignee or one holding in bad faith.   The cases of *Newton* v. *Porter*, 69 N. Y. 133, and *American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552, are cited to sustain the contention.   These cases, it will be seen upon examination, show that the plaintiff had no remedy at law, and he was able to fully identify the particular property into which the original property belonging to him had been converted, and which was in the hands of a voluntary assignee. It was a question of following the proceeds, and accurately and certainly identifying them, which the court held was necessary in order to permit of such following.   The defendants were also insolvent.   The case of *Angle* v. *Chicago, St. Paul &c. Railway Co.*, 151 U. S. 1, did not involve any question like the one herein.   In that case the land had been granted to the Portage Company by the State for the purposes named, and it was conceded by the demurrer that the officials of the Portage Company had been bribed by the Omaha Company to betray their trust, and the legislature had been induced by false allegations to revoke the grant to the Portage Company and to bestow it upon the Omaha Company.   The plaintiff had obtained a judgment against the Portage Company in an action at law, and the execution had been returned *nulla bona*, and the bill in equity was filed in the Circuit Court of the United States by the administratrix of the judgment creditor against the Omaha Company to reach the land formerly owned by the Portage Company and then in the hands of the Omaha

Company by reason of its own wrongdoing. Thus there was the illegal and wrongful act of the Omaha Company, by which the land once vesting in the Portage Company had been taken away and that same land regranted to the Omaha Company, and it was to reach that particular land which the Omaha Company had obtained by its wrongful act that the bill was filed. Mr. Justice Brewer, delivering the opinion of this court, said:

"And when the Omaha Company, by its wrongdoings, secured the full legal title to those lands, equity will hold that the party who has been deprived of payment for his work from the Portage Company, by reason of their having been taken away from it, shall be able to pursue those lands into the hands of the wrongdoer, and hold them for the payment of that claim which, but for the wrongdoings of the Omaha Company, would have been paid by the Portage Company, partially at least, out of their proceeds. While no express trust is affirmed as to the lands, yet it is familiar doctrine that a party who acquires title to property wrongfully may be adjudged a trustee *ex maleficio* in respect to that property."

These lands were identified, and were found in the hands of the actual wrongdoer, who had acquired them by reason of such wrong.

Now, there is no pretense in this case that any specific piece of property was in fact either the same timber or the proceeds of the timber wrongfully cut and disposed of by the defendants, or any of them. Nor was it averred that any particular timber had been taken from the land described in the bill. On the contrary, it is alleged in the bill that the complainant was unable to show just when or by whom the cutting was performed, or the logs manufactured into lumber had been sold, or just when and by whom the proceeds thereof were obtained and when the same were divided. There is a general allegation in the bill of complaint that the deceased, Daly, left an estate worth $12,000,000, located in the State of Montana and elsewhere, and that a large portion of that estate was the

result of the proceeds of Daly's illegal acts in his lifetime, in trespassing upon the lands of the complainant, and converting the proceeds of the sale of the timber growing thereon to his own use and benefit. It is also averred that he made his will, appointing Margaret P. Daly, defendant, executrix; and the will was duly admitted to probate, and letters of administration were duly issued to the defendant, Margaret P. Daly, on the fifteenth day of February, A. D. 1901, and she duly qualified and entered upon the discharge of her duties as such executrix; that Margaret P. Daly, under and by virtue of the terms of the will, and as the wife of Marcus Daly, is the owner of a large portion of his estate. It is plain that such allegations fall far short of even a pretense of identifying specific, definite property as the proceeds of certain other property wrongfully or fraudulently taken by defendants from the lands described in the bill. Such allegations are totally inadequate for that purpose.

Under the law providing for the examination of defendants, and under section 724 of the Revised Statutes, providing for the production of books and writings in actions at law, under the same circumstances that defendants might be compelled to produce them under the ordinary rules of proceeding in chancery, there is nothing in these allegations, which shows any necessity for a discovery in equity, such as would render the remedy more adequate therein than in an action at law.

Nor was there anything in the cases cited by complainant as showing a right to proceed in equity because one of the defendants is the executrix of a deceased person, who, it is alleged, was one of the parties guilty of the wrongdoing set forth in the bill. Upon the question of liability she is entitled to a trial at law and by jury, as well as the other defendants. In *Green's Administratrix v. Creighton*, 23 How. 90, it was said that a single creditor has been allowed to sue an administratrix for his demand in equity, and obtain decree for payment out of the personal estate, without taking a general account of the testator's debts. In that case the facts were complicated;

the original debtor and his surety were dead, and had died insolvent, and a portion of the assets of the estate of the latter could be traced to the possession of his administratrix, and the authority of a court of equity was required to call for a discovery of the nature and amount of the assets in hand. It was said that the debtor, Tunstall, had died insolvent, and Whiting, his surety, had also died insolvent. A portion of the assets belonging to the estate of the latter was in the hands of the surety of this administrator. A discovery of the nature and amount of the assets in hand was necessary if they were subject to the application, and it was held that the Circuit Court was authorized to entertain the suit, and the decree dismissing the bill was reversed. Certainly there is nothing in that case which in the least degree aids the proposition that because there is an administratrix named as a party, equity has jurisdiction, even though no discovery of assets is sought, and the bill shows that the estate represented by the administratrix is largely solvent, and the demand is for unliquidated damages against others besides the administratrix, and no debt is admitted, the alleged cause of action having arisen against the deceased, among others, for a tort.

In *Kennedy* v. *Creswell*, 101 U. S. 641, it was held that the creditor of a deceased person had a right to go into a court of equity for a discovery of assets and the payment of his debt, and that when there he would not be turned back to a court of law, to establish the validity of his claim. The basis of getting into a court of equity being a discovery of assets, the object of the bill was obtained, as the court held, by the admission of the executor, that he had sufficient assets, and that if so, the jurisdiction of the court remained to give a decree for the payment of the debt. Here is no such case. Daly is alleged to have been the principal wrongdoer, out of several defendants, in cutting and converting the timber on these lands owned by the Government. He died, leaving an estate of over $12,000,000, as averred in the bill of complaint, and the claim of the complainant is only for $2,000,000. Thus, by com-

plainant's own averment, the estate is largely solvent. There is no endeavor to discover assets and no ground for jurisdiction in equity, simply because one of the defendants is an executrix. The proposition of the complainant would confer jurisdiction in equity in every case of a legal cause of action for unliquidated damages for a tort, where one of the wrongdoers had died and an administratrix had been appointed, and the existence of assets was alleged by complainant, largely in excess of the complainant's demand, and the other defendants remained parties. This has never been so held in any case to which our attention has been called, and we are unable to find any principle of equity jurisdiction upon which to permit the maintenance of this suit on the special ground here asserted.

But it is averred there was a fiduciary relationship existing on account of the permits or licenses to cut timber, which, it is alleged, were given the defendant, Bitter Root Delevopment Company, and that in such permits there was set forth an obligation on the part of that company, and others acting for it, to make under oath monthly returns of the amounts and kinds of timber cut, with a description of the particular tract or tracts from which it was cut, how much was disposed of, and to whom, and that a failure to do so was a failure in a fiduciary capacity on the part of the defendant company, and therefore there is jurisdiction in equity. The Government contends that by reason of the duty of the Bitter Root Development Company to keep true and accurate accounts and to monthly submit statements to the officers of the Government, and by reason of its failure so to do, the proceeds of the lumber retained by it became in its hands a trust fund belonging to the complainant; that there was a breach of this trust; its extent is in the defendants' knowledge; and in such cases choice of remedy is with the party aggrieved, and he may proceed in equity for an accounting and pursue the fund. It is doubtful, to say the least, whether an obligation to report as to timber cut on the permitted lands constitutes any fiduciary relationship between the licensees and the Government,

with regard to an alleged wrongful cutting of timber on other
and separate lands. It is not, in truth, alleged that the returns
called for by the permit were not made. *Safford* v. *Ensign
Manufacturing Co.*, 120 Fed. Rep. 480 (Circuit Court of Ap-
peals). However that may be, there is no such obligation
(to render monthly accounts) set forth in the bill as being
part of the permit or license referred to therein. The bill
simply avers that Daly did, at certain times, during the several
years of said depredations, apply to and obtain from the law-
ful agents of the Government licenses to cut upon certain
small portions of the tracts above described, and under cover
of such permits the conspirators not only cut, carried away and
manufactured timber growing on the said lands included in
such licenses, but, well knowing that such permits gave them
no right or authority to enter upon other lands, they willfully
and fraudulently entered upon large tracts of land adjacent
thereto and cut the timber therefrom. There is no mention
of an obligation to render monthly accounts. The fact that
the defendants had permission to cut timber on certain tracts
of land described did not make their cutting of timber on other
tracts the act of trustees *ex maleficio*. When they went out-
side of the tracts for which license was given, they com-
mitted a trespass for which they were liable at law. And,
again, as the contents of the permits are not set forth, we can-
not take judicial notice of such contents in any particular case.
Different conditions may be contained in different permits,
and they are the subject of the discretion of the department
giving the permits.

It is also argued that a court of equity has jurisdiction in
such a case as this on the ground of an accounting. We do
not think that this is any such case as gives a court of equity
jurisdiction because of an accounting being necessary. There
are no accounts between the parties. The cause of action is
one arising in tort and cannot be converted into one for an
account. The case made is a plain trespass, for which the
defendants are liable in damages. Or it might be termed an

action in trover, as stated. Whatever books, if any, defendants may have kept, showing the amount and location of the timber cut and its value, can be perfectly well obtained by an inspection of these books in an action at law. No discovery is alleged to be necessary in aid of any action at law, although the bill shows that several such actions have in fact been commenced. The facts averred do not show jurisdiction for the general purpose of discovery.

Nor do we see that there is any jurisdiction on the ground of prevention of a multiplicity of suits. Those persons who were guilty of the wrong must be made parties in either court, in order to bind them. Such alleged multiplicity is not avoided in one court more than in the other. It is not a case where a few defendants may be made parties as representatives of a class holding under or claiming the same title or right, and so that a judgment against the representative defendants may bind all others of the class. There is no class and there can be no representatives.

We fail to see any fact alleged in this bill which constitutes a proper foundation for the jurisdiction of a court of equity. The Government counsel, however, assert that since the filing of this bill new and material facts have been discovered by the Government, which in the judgment of counsel would furnish foundation for a bill in equity, even though this bill is defective. In order to permit of the filing of such a bill, if counsel should be so advised, and so as not to run against a plea of *res adjudicata,* the judgment of dismissal is

*Affirmed, without prejudice, etc.*

Mr. Justice White and Mr. Justice McKenna took no part in the decision of this case.