**UNITED STATES v. NEWBURY MFG. CO. et al. (two cases).**

**SAME v. BELMONT KNITWEAR CO. et al.**

Nos. 762–764.

District Court, D. Massachusetts.

Jan. 16, 1941.

Mark M. Horblitt, of Boston, Mass., for defendants Robert P. Cable and Newbury Mfg. Co.

Harry Bergson, of Boston, Mass., for defendants Newbury Mfg. Co. and others.

BREWSTER, District Judge.

The above civil actions are before the court on motions to dismiss filed by all of the defendants except Nathan Thomson, upon whom no service was made. The defendant corporations in No. 762 will be referred to as "Newbury" and "Belmont". No. 763 is against Newbury and two of its stockholders; and No. 764 is against Belmont and the same two individuals, stockholders in that corporation. The motions are all on the single ground that the complaints fail to state a claim upon which relief can be granted.

In each complaint plaintiff has alleged a sale of merchandise in 1932 to Newbury, which had been fully consummated by delivery and acceptance of the goods and, so far as appears, payment of the purchase price. In each complaint, the plaintiff alleges that Newbury made the following agreement: "The purchaser agrees to dispose of the property covered by this contract for export to foreign countries only, and that it shall not be offered for sale for use in, nor be permitted to reach the local markets within, the continental limits of the United States. The purchaser further agrees to furnish at the time of shipment, and in the case of each individual shipment made, a copy of the manifest or bill of lading as evidence of the shipment to foreign countries of the property covered by this contract."

In Nos. 762 and 763 plaintiff also alleges a breach of that contract by the sale of quantities of said merchandise to Belmont and to others within the United States, and by failing to furnish evidence of shipments to foreign countries.

In No. 762 there are further allegations that Belmont was organized in 1934 with interest and control identical with Newbury, and that Belmont, with full knowledge of the promises made by Newbury and pursuant to a conspiracy with that corporation, purchased a portion of said merchandise and re-sold the same, realizing a gross profit therefrom.

In No. 763 it is alleged that the two individual defendants as stockholders of Newbury received salaries and dividends

Edmund J. Brandon, U. S. Atty., and Edward O. Gourdin, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

paid to them by Newbury out of the profits derived by the corporation from the sale of merchandise in violation of said contract.

In No. 764 it is alleged that the same individual defendants were stockholders in Belmont and, as such stockholders, received salaries and dividends paid to them by Belmont out of the profits derived by that corporation from the re-sale of the merchandise bought from Newbury.

In both Nos. 763 and 764 plaintiff seeks judgment against one of the two corpora-. tions measured by the gross profits received by each respectively, and also an accounting from the individual defendants for the sums received by each out of said profits.

 It is quite apparent that, in framing these complaints, the plaintiff proceeded upon the theory that it was entitled to follow the proceeds of the merchandise, sold by Newbury in violation of the contract of sale, not only into the hands of that corporation and its stockholders but into the hands of Belmont and its stockholders. It is equally obvious, I take it, that in order to prevail in this attempt, plaintiff must invoke some principle of equity jurisprudence which entitles a seller of merchandise to recover from the purchaser the proceeds derived from the disposition of the goods in violation of the purchaser's agreement and to follow these proceeds until the goods reach the hands of an innocent purchaser for value. Equity will afford relief when property has been acquired by fraudulent means, and will rescind the transfer and order restoration of the property and require an accounting for the proceeds if the property has been sold by the wrongdoer. Equity will likewise relieve a beneficiary when his fiduciary disposes of the trust res in violation of his trust. In such cases a constructive trust ex maleficio arises which equity will enforce by holding the trustee accountable for the value of the property illegally acquired. Jones v. Van Doren, 130 U.S. 684, 9 S.Ct. 685, 32 L.Ed. 1077; Angle v. Chicago, St. P., M. & O. Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55; United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; Independent Coal & Coke Co. v. United States, 274 U. S. 640, 47 S.Ct. 714, 71 L.Ed. 1270; Buffum v. Peter Barceloux Co., 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140.

And equity will follow the property or its proceeds until it reaches the hands of an innocent purchaser for value. Jones v. Van Doren, supra; United States v. Dunn, supra; Independent Coal & Coke Co. v. United States, supra.

The authorities proceed on the hypothesis that when property has been obtained by fraud equity recognizes the law to be that the property always belonged to the true owner and, therefore, its proceeds must also belong to him and may be reclaimed in a suit in equity against the voluntary assignee or the one holding in bad faith. United States v. Bitter Root Development Co., 200 U.S. 451, 26 S.Ct. 318, 50 L.Ed. 550.

 The wrongdoer is said to hold the property as trustee for the party who had been wronged. It can readily be seen that this rule has no application to .the facts alleged in the complaint. The allegations show a completed sale, passing full title to the merchandise to Newbury without reservations or conditions. There is no allegation that the sale was procured by fraud entitling the plaintiff to rescind the sale and recover the merchandise, nor is there any allegation even intimating that Newbury had assumed any fiduciary· obligations with respect to the same. It is a reasonable inference that the promise made by Newbury was a part of the consideration, and that there has been a partial failure of consideration. Such circumstances, however, do not give rise to a constructive trust ex maleficio. The extent of plaintiff's allegations common to all the complaints is that Newbury entered into a contract with the plaintiff which it proceeded to violate and, as a means of escaping the consequence, it organized Belmont, with an interest and control identical with Newbury.

It follows, therefore, that the plaintiff is not entitled to judgments against the individual defendants who may· have received salaries and dividends from the defendant corporations. It also follows that Belmont cannot be liable for profits derived from purchase and sale of the goods subject to the agreement on any theory of constructive trust.

In view of the liberal provisions of the New Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for one form of action and abolishing procedural distinction between law and equi-

ty, I assume it becomes necessary to determine whether the plaintiff is entitled to a judgment against either or both of the defendant corporations. Before entering upon consideration of these matters, however, it may be well to dispose of the defendants' contention that the contract alleged is not enforceable because (1) it was unauthorized, and (2) that it was in restraint of trade.

The complaints do not disclose what administrative agency made these contracts, but I assume that the defendants are right in saying that they were made by the Secretary of War pursuant to an Act of Congress, 40 Stat. 850, 40 U.S. C.A. § 314. This statute authorized the President, through the head of any executive department, to sell upon such terms "as the head of such department shall deem expedient" war supplies, material and equipment and by-products thereof. This statute expressly conferred upon the department head the authority to fix the terms upon which the sale could be made. If the defense can be set up against the United States that the terms of a contract authorized by it were against public policy and therefore void, a question upon which the authorities are not agreed (17 Corpus Juris Sec. page 565), I would still be of the opinion that the court would not be justified in declaring that this restriction upon the re-sale of the merchandise was against public policy. I can discover nothing unreasonable in a provision that restricts the seller to the export market. The restriction did not tend to injure the public; on the contrary, the department may very well have deemed it conducive to the economic welfare of the United States. Nor can it be said that the limited restriction operated to unreasonably restrain trade. It is undoubtedly true that under certain circumstances a seller of personal property cannot restrict the future alienation of the property, but if the restrictions are reasonable they are upheld. Meyer v. Estes, 164 Mass. 457, 464, 41 N. E. 683, 32 L.R.A. 283.

Considering first the liability of Newbury, there can be no doubt that on the allegations either of No. 762 or 763, Newbury is liable for breach of a contract into which it entered with the plaintiff. The extent of the plaintiff's recovery against this defendant may well be left to the trial court to determine.

It is quite clear that the allegations would not support an action sounding in tort either against Newbury or against both corporations as joint tort-feasors. A breach of contract, however deliberate or intentional, does not become a tortious wrong. Osgoodby v. Talmadge et al., 2 Cir., 45 F.2d 696; Osgoodby v. Talmadge et al., 2 Cir., 67 F.2d 610.

But if actions of tort were alleged, the plaintiff would need to prove damages in order to recover. United States v. Dunn, 268 U.S. 121, 131, 45 S.Ct. 451, 69 L.Ed. 876.

Considering secondly the liability of Belmont, it must be conceded that since that corporation was not a party to the contract, it should not be held liable for a breach of it. Garst v. Hall & Lyon Co., 179 Mass. 588, 61 N.E. 219, 55 L.R.A. 631.

It is argued, however, in behalf of the plaintiff, that this corporation is liable to the plaintiff in tort for maliciously interfering with the performance of the contract made by Newbury. It is undoubtedly a well-established principle of law that one who maliciously, or without just cause or excuse, persuades another to break a contract to the injury of the other party to the contract is liable in tort. Angle v. Chicago, St. P., M. & O. Ry. Co., 151 U.S. 1, 13, 14 S.Ct. 240, 38 L.Ed. 55; Walker v. Cronin, 107 Mass. 555; Rice v. Manley, 66 N.Y. 82, 23 Am.Rep. 30; 15 Corpus Juris Secundum, Conspiracy, § 13, page 1020.

The allegations that Belmont was organized since the contract was made, with interest and control identical with Newbury, and that with full knowledge of the restriction placed upon the sale it purchased and re-sold a quantity of the goods, and that this was done pursuant to a conspiracy with Newbury to violate the terms of the contract, if proved, do not, in my opinion, bring the case within the rule.

The rule presupposes that the party defaulting was ready, able and willing to perform and would have done so if it had not been prevented or persuaded by the malicious and unwarranted interference of a third party.

See Angle v. Chicago, St. P., M. & O. Ry. Co., supra.

See also Sweeney v. Smith et al., C.C., 167 F. 385; Lamport v. 4175 Broadway, Inc. et al., D.C., 6 F.Supp. 923; Sklarsky

v. Great Atlantic & Pacific Tea Co., D.C., 47 F.2d 662.

Belmont did not render Newbury unable to perform, or persuade it by fraud or deceit to pursue a course of conduct in violation of the plaintiff's contract. It is my opinion that the rule cannot be applied to a case where a successor corporation is employed by its predecessor as an instrumentality by which the latter proceeds to violate its contract.

Whether Belmont is the successor to Newbury and as such can be called upon to satisfy claims of Newbury is not shown in the allegations and not pressed in plaintiff's brief. My conclusion is that the plaintiff fails in its complaint to state a claim against the defendant Belmont and the individual defendants. Since the plaintiff, upon the pleadings, is entitled to only one judgment against Newbury, there seems to be no objection to dismissing No. 762 and allowing No. 763 to stand against Newbury alone and dismiss it as to the other defendants.

The motions of the defendants to dismiss No. 762 are allowed.

The motion to dismiss No. 763 is allowed as to the defendant Cable.

The motions of the defendants to dismiss No. 764 are allowed.

The motion of Newbury to dismiss No. 763 is denied.