# Power, Appellant, *v.* Grogan.

*Practice, O. C.—Equity powers—Appointment of Receivers—Decedents' estates—Ejectment.*

1. Although the orphans' court has been called a court of equity, in respect to the few subjects within its jurisdiction, the ancillary powers of such a court have not been given to it. It possesses neither general chancery powers nor direct statutory authority by virtue of which it can appoint receivers.

2. The orphans' court has no power to make an appointment of an administrator c. t. a. as receiver of the testator's estate for the purpose of bringing an action of ejectment for certain real estate devised by the will to a life tenant with a limited power of alienation and conveyed by the latter to a third party in fee.

*Decedents' estates—Executors and administrators—Administrator c. t. a.—Right to bring ejectment.*

3. Where the will of a decedent authorizes, empowers and directs his executor to sell, transfer and convey his real estate, the executor, by virtue of the operation of the Act of February 24, 1834, takes an estate in the land as fully as if it had been devised to him to be sold and may, therefore, maintain ejectment to recover the possession, and an administrator c. t. a. has all the rights that would have been possessed by the executor named in the will.

*Practice, C. P.—Amendments—Ejectment—Change of parties—Plaintiff suing in representative capacity.*

4. Although a change of parties which involves a change of the cause of action is not within the province of amendments they may be allowed when a change in the cause of action is not involved; and, in such instances, amendments may be permitted where the proper individual is on the record as plaintiff but is erroneously designated as to the capacity in which he has a right to sue.

5. Where the statute of limitations does not prevent, an administrator c. t. a. with power to bring ejectment may be substituted as plaintiff in his representative capacity in an ejectment begun by himself as receiver of the testator's estate under appointment of the orphans' court.

*Evidence—Ejectment—Real estate—Contract of sale—Consideration—Value of land—Value of services given as consideration—Witness—Party deed—Subornation of witness.*

6. In an action of ejectment by the administrator c. t. a. of a decedent to recover possession of certain real estate where the defendant relies

upon an alienation of the premises in question to herself by a life tenant with power of alienation for support and maintenance under the will of decedent, in consideration of the maintenance and support of the life tenant by the defendant, the plaintiff should be permitted to prove the value of the property and the value of defendant's services rendered in pursuance of the contract of maintenance.

7. In such a case the defendant may testify as to matters which took place after the decedent's death between his widow and herself.

8. In an action of ejectment it is proper to permit a witness offered by the plaintiff to prove that the defendant had offered to pay the witness a money consideration if she would not take the witness stand against the defendant.

Argued March 27, 1911. Appeal, No. 68, Jan. T., 1911, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1906, No. 2,280, on verdict for defendant in case of William J. Power, receiver of the real and personal estate of John Loughran, deceased, v. Catherine Grogan. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Ejectment to try the title to house and lot at northeast corner of Fifteenth and Catherine streets, Philadelphia. Before McMICHAEL, P. J.

John Loughran died May 3, 1890, leaving a widow, Bridget, but no surviving issue. By his will he gave to her, after payment of debts and various legacies, all of his residuary estate "for life, it being my wish and will, however, that she shall use whatever of the principal of such residue as may be necessary for her proper maintenance and support." Upon her death he gave the residue to such Catholic charities as she might designate in her last will. The testator then provided that should his wife fail to designate charities to take the ultimate residuum, it should go to certain institutions specified by him. He appointed his wife executrix of his will and provided, "I do hereby authorize, empower and direct my said executrix to mortgage, sell, transfer or convey any or all of my real estate, whenever she may think proper."

The widow died March 29, 1902, leaving five or more alleged last wills under successive dates, each of which was claimed by the beneficiaries thereunder to be the only lawful will. The last in date of these wills became the subject of contest immediately after her death, which contest on July 14, 1909, reached a conclusion favorable to the will: Trainer v. McGarrity, 40 Pa. Superior Ct. 57. In June, 1906, when the issue devisavit vel non had been awaiting trial for several years, the present plaintiff, upon his own petition as the administrator c. t. a. of the estate of John Loughran, deceased, was appointed by the orphans' court receiver of all the assets of the said estate. The petition set forth that if the alleged will then in contest were rejected, the next prior will would immediately become the subject of a new contest, and so with each of the other wills. The petition further averred that Catherine Grogan, the defendant here, had entered into a transaction with the testator's widow, Bridget Loughran, when the latter was upwards of seventy years of age, whereby, for an expressed consideration of one dollar, the widow had undertaken to convey to the defendant the real estate in question, which was part of the estate of John Loughran, and that the defendant was in possession of and claimed the property in fee simple; that she was without means and would be unable to respond in mesne profits; that by reason of the pending will contest, and those in prospect, no action of ejectment could be brought for an indefinite period without the appointment of a receiver for that purpose. The petition prayed that a receiver be appointed to take possession of the real and personal property belonging to the estate of John Loughran. On July 19, 1906, the plaintiff, William J. Power, was appointed such receiver, and he thereupon instituted this action of ejectment.

At the first trial of the cause in the court below the plaintiff was nonsuited because he had not been expressly empowered by the orphans' court to institute the litigation, but on May 24, 1910, the orphans' court rati-

fied and confirmed the act of the plaintiff in bringing the suit, and the nonsuit was taken off. When the case was again tried, the plaintiff proved title in John Loughran and rested. The defendant then introduced evidence to show that Bridget Loughran had conveyed the property to her in pursuance of an agreement to compensate her for nursing and caring for said Bridget Loughran so long as she lived. After rebuttal testimony, the issues were submitted to the jury and a verdict was rendered for the defendant. The plaintiff has appealed from the judgment entered upon that verdict.

The trial judge charged inter alia as follows:

"John Loughran, after he had made certain legacies, . . . . made this provision: 'I give, bequeath and devise all the rest, . . . . of my estate . . . . to my wife, Bridget Loughran, for life, it being my wish and will, however, that she shall use whatever of the principal of such residue as may be necessary for her proper maintenance and support.' My construction of that clause is that it did not give to Bridget Loughran power to absolutely dispose of that property unless it was necessary for her maintenance and support. . . . She had not the right to arbitrarily dispose of the property. . . . Whether or not Bridget Loughran was justified in making provision for her support and maintenance to the end of her life, by employing some one to take care of her and keep her until the end of her life and agreeing to convey the property to her . . . . will be a question of fact for you. There will be another question of fact for you to determine,—did she make such a bargain. . . . If she, from motives of affection, or from any motive at all, simply gave this property to Catherine Grogan . . . . she was exceeding her power under the will. Her husband . . . . meant that she should have the property or the use of it for her life, and that she should use so much of it as was necessary for her maintenance and support." After referring to the testimony relating to the negotiations between the widow and the defendant concerning the bar-

gain for the services to be rendered by the latter to the former and the subsequent conveyance of the property as alleged by the defendant in fulfillment of that bargain, the court went on to say, "Was that done in good faith? Was it the act and deed, was it the voluntary act,—assuming that you come to the conclusion that it was necessary, that she thought it was necessary, and it was necessary for her support and maintenance,—was it her free act and deed, or did Catherine Grogan, the younger woman, exercise such an influence on the mind of the older woman as to amount to a fraud? Or, did Catherine Grogan,—and this you will have to determine,—in furtherance of a selfish,—I say no more than selfish,—design to get hold of the woman's property, get her to deed the property to her? . . . . The question you will have to determine is, Was it a fair and equitable transaction? Or, did Catherine Grogan impose on the old woman? Did she impose her will on that old woman's will? Did she make a sharp bargain with the old woman, and use fraud to carry it out? . . . ." Then, after referring to the evidence in a general way and to the deed to the defendant, the court said, "That is all testimony for you to consider, first, as to whether it was necessary for her support and maintenance, and if so, whether the bargain was made as Catherine Grogan says it was made. And if it was made, then consider whether it was made under duress. . . . That is, under force which the superior will acting upon an inferior one exerts, which the strong, vigorous, healthy person has upon the sick and infirm; or, to put it in another way, whether there was fraud. Because if there was fraud, this deed should be swept aside." And, in answer to a point, the court again said, "Unless the jury find that it was necessary for the proper maintenance and support of Bridget Loughran, to make use of the property in question, by conveying the same away from the estate, they must find for the plaintiff."

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) overruling plaintiff's objection to testimony by the defendant regarding matters occurring between herself and Bridget Loughran before the latter's death; (2) excluding evidence of the value of the property in question; (3) excluding evidence of the value of the defendant's services to the widow, Bridget Loughran; (4) excluding evidence to show that another property enjoyed by the widow was purchased with moneys belonging to the estate of John Loughran; (5) refusal to strike out evidence offered by the defendant to establish the contract between herself and the widow; (6) refusal to allow a witness offered by the plaintiff to prove that the defendant had offered to pay her a money consideration if she would not take the witness stand against the latter; (7) exclusion of a question objected to as leading; (8) a portion of the charge in which the trial judge told the jury that the testimony which had been admitted concerning the defendant's experience and capacity as a nurse should only be considered by them in passing upon her credibility, and that "as to the exact amount of wages she got, I do not think it very important, except in so far as it affects her credibility;" (9) refusal of binding instructions for the plaintiff; (10) refusal to charge that "the transaction between the defendant and Bridget Loughran is not shown to have been a fair and equitable one;" (11) affirming defendant's eighth point: "If the jury believe that the defendant, Catherine Grogan, at the request of the said Bridget Loughran and upon her promise to compensate defendant, went to live with the said Bridget Loughran, . . . . and assisted, nursed and waited upon and attended her from December, 1900, to March, 1902, when Bridget Loughran died, during which time defendant received no wages therefor, and if you believe that said Bridget Loughran, in good faith and as an honest exercise of the discretion vested in her by her husband's will, deeded said property to Catherine Grogan, the defendant, in consideration of the said Catherine Grogan having come to live with her, and having assisted,

nursed, waited upon and attended her prior to the date of the deed, and also in consideration of said defendant, assisting, nursing, waiting upon and attending her for the balance of her life, then the defendant has paid a full, complete and fair consideration for the property in question, and the same rightfully belongs to her, and your verdict should be for the defendant;" (12) refusal to enter judgment non obstante veredicto for the plaintiff; (13) entry of judgment for the defendant.

*E. Spencer Miller,* with him *James Fitzpatrick* and *Anthony A. Hirst,* for appellant.—The jury should have been charged peremptorily for plaintiff, because the transaction set up by the evidence of defendant, whereby she claimed to have acquired title to the property in question, would have been an invalid one: Johnson v. Johnson, 51 Ohio St. 446 (38 N. E. Repr. 61); Baxter v. Bowyer, 19 Ohio St. 490; Cox v. Wills, 49 N. J. Eq. 573 (25 Atl. Repr. 938); Fox's App., 99 Pa. 382; Follweiler's App., 102 Pa. 581; Cox v. Sims, 125 Pa. 522; Taylor v. Bell, 158 Pa. 651; LaBar's Est., 181 Pa. 1; Gross v. Strominger, 178 Pa. 64; Tyson's Est., 191 Pa. 218; Trout v. Rominger, 198 Pa. 91; Davis & Desauque's Est., 5 Whart. 530; Swoyer's App., 5 Pa. 377; Brittain's Est., 28 Pa. Superior Ct. 144; Mulholland's Est., 224 Pa. 536; Spencer's Est., 227 Pa. 469.

Even if the transaction was not necessarily invalid, the charge and rulings did not permit the jury to find that the transaction, as alleged to have been effected, was not "necessary for her proper maintenance and support."

Plaintiff ought to have been allowed to prove that the defendant offered to pay Margaret Devine $200 if she would not take the witness stand against her: McHugh v. McHugh, 186 Pa. 197.

If a fundamental question, which was originally decided by the court below, in plaintiff's favor, to wit, the standing of the receiver who is plaintiff, in an action of

ejectment, properly arises now in this court, the ruling of the court below upon that point must be upheld: Hughes's App., 53 Pa. 500; Jones v. Maffet, 5 S. & R. 523; Church v. Ruland, 64 Pa. 432; Rosenberg v. Mencke, 208 Pa. 331.

*Henry A. Hoefler,* for appellee.—Binding instructions, or judgment non obstante veredicto, cannot be given or entered, where any question of fact arises for the determination of a jury: Dalmas v. Kemble, 215 Pa. 410.

The widow had the right to convey: Tyson's Est., 191 Pa. 218.

Catherine Grogan was a competent witness. It is submitted that McHugh v. McHugh, 186 Pa. 197, cited by appellant, does not apply where the defendant goes on the stand.

The appellant had no right to bring this action of ejectment: Jones v. Maffet, 5 S. & R. 523; Warden v. Eichbaum, 14 Pa. 121; Webster v. Webster, 53 Pa. 161; Hughes's App., 53 Pa. 500.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

The plaintiff was appointed receiver by the orphans', court and brought this action of ejectment in that capacity. Since, for reasons which will be hereinafter stated, the case must be retried, before considering the several formal assignments of error, we shall first dispose of the question of the right of the orphans' court to appoint and authorize a receiver to institute and prosecute such an action, and determine, in this respect, how the action should be proceeded with in the court below.

"The appointment of a receiver is a remedy of purely equitable origin, having originated in the English Court of Chancery, where it has been employed from a very early time. It . . . . grows out of the inherent power of a court of equity to afford relief where the remedies to be obtained in the courts of ordinary jurisdiction are inadequate:" 23 Am. & Eng. Ency. of Law (2d ed.), 1002; Kerr on Receivers (5th ed.), 1. "The jurisdiction exercised in the appointment of receivers has always been

treated as a purely equitable one, and the remedy has been generally regarded, next to that of injunction, as the most efficient and salutary of the extraordinary remedies known to the courts of equity:" High on Receivers (4th Ed.), sec. 41. "The appointment of a receiver is the exercise of a power in aid of a proceeding in equity. . . . The court must be convinced that it is needful and is the appropriate means of securing a proper end:" Chicago & Allegheny Oil & Mining Co. v. U. S. Pet. Co., 57 Pa. 83, 91. The Act of May 19, 1874, P. L. 206, sec. 7, vests the orphans' court with power to issue preventive orders "in the nature of injunctions," but neither that nor any other statute expressly gives it the right to appoint receivers. Since the orphans' court does not possess general chancery powers, it is difficult to conceive by what authority it made the appointment in this case. Further, we fail to see the necessity for the appointment.

In Com. v. Judges of the Court of Common Pleas, 4 Pa. 301, 302, we said: "Our orphans' court is essentially . . . . (a court of chancery) in its proceedings and decrees within the limited sphere of its jurisdiction;" in Guier v. Kelly, 2 Binney, 293, 298, "The orphans' court, in matters within their jurisdiction, proceed on the same principles as a court of chancery;" and in Black's Exrs. v. Black's Exrs., 34 Pa. 354, 357, and Horner v. Hasbrouck, 41 Pa. 169, 180, "It (the orphans' court) is possessed of chancery powers, and can proceed, according to chancery practice . . . . in the administration of its appropriate duties." But, while in this sense the orphans' court is a court of equity, the limitations upon its chancery powers are clearly marked. "The chancery jurisdiction is the model, and contains the principles most congenial to this institution, and the legislature have in very many instances sanctioned and enjoined the application of these principles to proceedings in the orphans' court. . . . The orphans' court is sometimes called a court of limited jurisdiction. This is true, if regard be had to the *derivation* of its powers, for it possesses none inherently, and exercises

such only as are conferred by or implied from legislation; and it is true also as to the *subjects* of its jurisdiction, for these are set down in the statutes:" Shollenberger's Appeal, 21 Pa. 337, 340. This thought was brought out even more strongly in Brinker v. Brinker, 7 Pa. 53, 55, where we said: "Although the orphans' court has been called a court of equity, in respect to the few subjects within its jurisdiction, the ancillary powers of such a court have not been given to it. It is a special tribunal for specific cases; and its resemblance to a court of equity consists in its practice of proceeding by petition and answer containing the substance, but not the technical subtleties and nice distinctions of a bill in equity; by which, however, justice is obtained more conveniently and as certainly as in courts of equity, purely so-called. . . . The orphans' court . . . . has not the general powers of a court of equity. . . ." Finally, in High on Receivers (4th Ed.), sec. 42, we find it stated, "The appointment of receivers being a power pertaining to courts which are vested with chancery jurisdiction, a court of probate powers only cannot appoint a receiver in aid of the collection of the estate of a deceased person. And since a probate court has no power to appoint a receiver, an action by a receiver thus appointed cannot be maintained;" and in Anderson's Law Dictionary, 815, a "probate court" is defined as, "A court exercising jurisdiction over the estates of deceased persons, possessing, as to personal assets, nearly all the powers formerly exercised by the courts of chancery and the Ecclesiastical Courts of England. . . . Other names are 'orphans' and 'surrogate' courts." We conclude that the orphans' court had no power to appoint the plaintiff a receiver or to authorize him as such to bring this action of ejectment.

It appears by the petition for the appointment of the receiver that the plaintiff was then, and presumably still is, the administrator c. t. a. of the estate of John Loughran, deceased. The will of the decedent authorizes, empowers and directs his executor to sell, transfer and convey his

real estate. "The will gives the executor the power to sell the real estate in question. By operation of the Act of February 24, 1834, P. L. 70, the executors took the estate in the land as fully as if it had been devised to them to be sold. They may, therefore, maintain ejectment to recover the possession:" Chew's Exrs. v. Chew, 28 Pa. 17, 20. Also see Kirk v. Carr, 54 Pa. 285, 288, 289. "The administrator c. t. a. had all the rights that would have been possessed by the executor named in the will:" Sears v. Scranton Trust Co., 228 Pa. 126, 135. Since the original executor had the right to institute the ejectment, the plaintiff could have brought the action as administrator c. t. a., and there was no necessity for the appointment of a receiver for that purpose.

In view of the fact that the administrator c. t. a. and the receiver are in point of fact the same individual, can the record be amended? Although a change of parties which involves a change of the cause of action is not within the province of amendments (Wildermuth v. Long, 196 Pa. 541; Garman v. Glass, 197 Pa. 101), they may be allowed in the substitution of parties plaintiff where a change in the cause of action is not involved; and, in such instances, amendments may be permitted where the proper individual is on the record as plaintiff but is erroneously designated as to the capacity in which he has a right to sue: Clifford v. Prudential Life Ins. Co., 161 Pa. 257; Jamison v. Capron, 95 Pa. 15. On this subject also see Adams v. Edwards, 115 Pa. 211. Here, the plaintiff, if he should recover by showing a right of possession against the defendant, would hold the property for whomsoever entitled, no matter whether the plaintiff be designated as receiver or as administrator c. t. a. (Warden v. Eichbaum, 14 Pa. 121, 127); and, inasmuch as the statute of limitations has not run, there can be no objection to an amendment in this respect when the record is returned to the court below.

While we take the view that the plaintiff might have brought this action of ejectment as administrator c. t. a.,

we do not wish to be understood as expressing any opinion upon his right to recover in that or any other capacity; we only decide such questions as are properly raised by the assignments of error, which we will now proceed to consider.

Clause e, sec. 5, of the Act of May 23, 1887, P. L. 158, would not exclude the testimony of the defendant. The other party to "the thing or contract in action," viz., the title conveyed to the defendant, was not John Loughran or his estate, but Bridget Loughran, a life tenant with the right to consume; and although the latter was dead, her right had not passed to any party on the record, and the litigation was not against her estate or anyone representing her estate. Again, the testimony was not as to anything that occurred in the lifetime of John Loughran or between him and the defendant, but as to matters which took place after his death between his widow and the defendant. The first assignment of error is overruled.

The court below fell into error when it declined to allow the plaintiff to prove the value of the property or the value of the defendant's services as a nurse. Neither one of these values would have been conclusive upon any of the issues involved in a proper determination of the case, but both of them were evidence to assist the jury in passing upon the issue as to the good faith of the transaction depended upon by the defendant, viz., the alienation of the property for the maintenance and support of Bridget Loughran and the consideration paid by the defendant for the conveyance. From this standpoint the testimony concerning the wages which the defendant had been previously earning was of importance beyond the mere effect it might have had upon the question of her credibility as a witness. The second, third, and eighth assignments are sustained.

The fourth, fifth, and seventh specifications of error were not pressed by counsel for the appellant, and it is sufficient to say that we see no merit in any of them; these assignments are all overruled.

The testimony offered to show an alleged attempt to suborn one of the plaintiff's witnesses should have been admitted, under the principles laid down in McHugh v. McHugh, 186 Pa. 197, and Com. v. Brown, 23 Pa. Superior Ct. 470, 502. The sixth assignment is sustained.

The issue suggested in the tenth specification of error was properly submitted to the jury; the assignment is overruled.

We see no error in the affirmance of the defendant's point covered by the eleventh specification; particularly is this so when we consider the elaboration in the general charge of the plaintiff's side of all the matters referred to in the point in question. The eleventh assignment is overruled.

The case was placed before the jury in a thoughtful and careful charge in which the governing principles of law, as laid down in Tyson's Est., 191 Pa. 218, 226, were properly stated, and the will of John Loughran was correctly construed, so far as essential to a determination of the questions involved; the issues were for the jury, and we cannot say that the evidence was insufficient to justify their submission, or to sustain the verdict. The ninth, twelfth, and thirteenth assignments are overruled.

For the reasons hereinbefore stated the judgment of the court below is reversed with a venire facias de novo.