### Kornfield, Appellant, *v.* Mentor Building and Loan Association et al.

Argued January 16, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*B. D. Oliensis,* for appellant.

*Marcy Feder,* with him *Ladner & Ladner,* for appellees.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

Plaintiff filed a bill in equity averring that she was the owner of a bond and mortgage and that on February 25, 1931, she entered into a written agreement with the defendant, the terre-tenant of the mortgaged premises, for the extension thereof until May 13, 1932, and for the assumption by defendant of liability thereunder. She attached to the bill a copy of the agreement, in which she stipulated with the association to extend the time for the payment of the principal of the bond until May 13, 1934, upon the following conditions to be performed by the association, to wit: That it would pay $500 on account of the principal, and the semiannual interest which accrued thereon within fifteen days after the same becomes due and payable, that it would pay all taxes and water rents assessed and to be assessed on the mortgaged premises, and produce receipts therefor on or before the first day of September of each and every year, that it would keep the buildings thereon insured against loss or damage by fire for the benefit of the plaintiff, and that it would comply with all the other provisions contained in the bond and mortgage.

She averred further that the association, in pursuance of the contract, had paid $500 on account of the principal, all the interest which accrued thereon until May

13, 1934, and the taxes and water rents up to and including the year 1932, but defaulted as to all subsequent payments, that on March 30, 1933, the association went into voluntary liquidation and, to effectuate that purpose, had transferred all its assets to three liquidating trustees, who were joined as parties defendant; and that the latter have repudiated the plaintiff's claim against the association and threaten to exclude her from participation in the distribution of the association's assets.

Plaintiff prayed that she be adjudged a creditor of the association as to both the unpaid principal of her mortgage and all interest accrued thereon, and as such entitled to participate to that extent in *pari passu* with all other creditors in the distribution of the assets; or, if the court be of the opinion that the assumption by the association extended only to the interest, the payment of taxes and water rent, and the maintenance of insurance upon the mortgaged premises, that a decree be entered directing the liquidating trustees to make proper provision for meeting these periodic disbursements as they accrue, on an equal basis and in *pari passu,* with the other creditors of the association.

Plaintiff also prayed for an injunction restraining the liquidating trustees from making distribution of the assets to the exclusion of the plaintiff, for the appointment of a receiver to take charge of the association's assets, and for an accounting.

In the answer filed, defendants averred that "the agreement of extension shows nowhere within its terms that the payment of the principal is guaranteed by any of them," that "the bill is defective in that it alleges a default in the terms of the agreement of extension dated February 25, 1931, which obviously appears to have accrued after the extension agreement expired," and that "the bill is defective in that its averments set forth a set of circumstances which would give the complainant adequate remedy at law."

The court below held that the plaintiff had a full, complete and adequate remedy at law, the objection made upon that ground was sustained, and the bill of complaint was certified to the law side of the court for further proceedings. This appeal followed.

In its opinion, dismissing the case, the court below said: "Without endeavoring at this time to specifically interpret the rights of the parties under said agreement, it is obvious that it constitutes an agreement to extend the term of the obligation for approximately one year and three months upon the payment of the sum of $500 and the payment of interest, taxes, water rents and maintenance of insurance, etc. We find no language specifically assuming the principal obligation as contended by the plaintiff, and indeed cannot find any justification for the plaintiff's contention that the agreement constitutes a perpetual guarantee of the payment of interest, taxes, water rents, and the maintenance of fire insurance until the principal of the mortgage is repaid."

The averments of the bill clearly disclose that plaintiff claims as a general creditor of the association, and before the establishment and adjudication of her rights seeks to have a receiver appointed, an account rendered and an injunction issued merely because the defendants refuse to admit the claim. It has been clearly established that under such facts a court of equity will not take jurisdiction. The receiver, the accounting, and the injunction asked for are purely ancillary to plaintiff's primary demand. Her rights against the defendants depend upon the provisions of the extension agreement. That this agreement is equivocal in character is apparently recognized by appellant's counsel, for he says in his brief: ". . . the written agreement of extension— the 'document and deed' upon which her claim is predicated—owing to the rather conflicting tenor of paragraphs 3 and 4 thereof left the question of the association's liability for the principal doubtful and open to

dispute, and rendered it necessary for her to 'ask the judgment of the court on two alternatives.' A brief analysis of these two paragraphs will readily show the nature of the conflict." The court below was unable to find anything in the agreement which provided for a guarantee by the association of payment of principal. The appellee justly contends that the assumption of such personal liability must be by express words, as provided by the Act of June 12, 1878, P. L. 205. The agreement contains no such express provision.

Plaintiff further claims that although she is not a judgment creditor she is entitled to a receiver because of the trust relationship between her and the liquidating trustees over which equity has specific jurisdiction, and because of the corporate character of defendant.

This court in *McDougall v. Huntingdon and Broad Top R. & C. Co.*, 294 Pa. 108, 143 A. 574, said: "Generally, a creditor must show that he has a valid claim against the corporation and that he has exhausted his legal remedies: see *Fletcher, Cyclopedia of Corporations*, section 5228. A simple contract creditor is ordinarily required to reduce his claim to judgment, and to show that this judgment cannot be collected by ordinary execution process: see *14a, C. J.* 956." In that case this court said further: "Receivers will not be appointed unless the chancellor is convinced the right is free from doubt *(Howeth v. Coulbourne Bros. Co.*, 115 Md. 107, 80 Atl. 916), the loss irreparable, with no adequate legal remedy, and the relief sought is necessary. Receivers are appointed only in aid of some recognized, presently existing legal right, and will not be appointed where receivership is the sole relief asked. The appointment is discretionary with the court, and its act will not be disturbed unless there is clear abuse of sound judicial discretion." (Citing cases.)

The United States Supreme Court in the case of *Pusey & Jones Co. v. Hanssen*, 261 U. S. 491, said: "But an unsecured simple contract creditor has, in the absence of

statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property, and although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy. After execution upon a judgment recovered at law has been returned unsatisfied, he may proceed in equity by a creditor's bill."

In *Hogsett et al. v. Thompson,* 258 Pa. 85, 101 A. 941, this court said: "These plaintiffs were simple contract creditors, who had no judgments or liens upon the property, or any equitable interest in any of the assets of the defendant. The general rule applicable in such case, is stated in *High on Receivers* (4th Ed.), section 406, as follows: 'Having already shown that the aid of a receiver is extended only in behalf of creditors who have fully exhausted their remedy at law, it follows necessarily that the jurisdiction will not be exercised in favor of mere general creditors, whose rights rest only in contract and are not yet reduced to judgment, and who have acquired no lien upon the property of the debtor. Courts of equity will not permit any interference with the right of a debtor to control his own property, at the suit of creditors who have acquired no lien thereon, and whatever embarrassment the creditor may experience, by reason of the slow procedure of the courts of law, must be remedied by legislative and not by judicial authority. And while there are a few instances where the courts have maintained a contrary doctrine, the great weight of authority supports the rule that, in the absence of statutory provisions to the contrary, a general contract creditor, before judgment, is not entitled either to an injunction or a receiver against his debtor, upon whose property he has acquired no lien.' "

We cannot adopt the contention of the plaintiff that the Act of June 16, 1836, P. L. 784, section 13, giving our

courts equity jurisdiction in the control, removal and discharge of trustees, and over corporations, gives a simple creditor a right to have a receiver appointed for a corporation. As the record stands there is nothing warranting plaintiff's claim to be a *cestui que trust* as regards the association's assets. Her status rises no higher than that of one claiming to be a creditor of the association. Plaintiff cites the cases of *Stone v. Schiller B. & L. Assn.*, 302 Pa. 544, 153 A. 758, and *Love v. Clayton*, 287 Pa. 205, 134 A. 422, in support of the propositions, respectively, that the assets in the hands of the liquidating trustees are held, first, for the benefit of creditors, and, secondly, that the trustees cannot prefer one creditor over another and that acts prejudicial to a *cestui que trust* may be restrained by injunction. In these cases the creditors had reduced their claims to judgment; such is not the situation here.

Plaintiff's rights in respect to assets in the hands of the defendants, Henry B. Ladner, William W. Ford, and Wilson B. Shinn, as liquidating trustees of the Mentnor Building and Loan Association, have yet to be adjudicated. As the court below found, the proper forum for their adjudication is that of law. Plaintiff has no status at this stage of the proceedings to invoke the interposition of equity.

The decree is affirmed at appellant's cost.