IVEY et al. v. HOUSING FOUNDATION
OF AMERICA, Inc., et al.
Civil Action No. 2788.

District Court, M. D. Pennsylvania.

Sept. 5, 1947.

Robert J. Doran and Reynolds, Reynolds & Doran, all of Wilkes-Barre, Pa., for plaintiffs.

Donald O. Coughlin, of Wilkes-Barre, Pa., for defendants.

MURPHY, District Judge.

The problem before us arises from a suit by plaintiffs, citizens of North Carolina, against defendants, citizens of Pennsylvania, the Housing Foundation of America, Inc., a corporation (hereafter called Foundation), and O. C. Westfield, an individual. Jurisdiction is based upon diversity of citizenship and averment of the required jurisdictional amount.

The question for decision at this time is plaintiffs' request for the appointment of a receiver pendente lite of defendants' property. Plaintiffs join a prayer for an accounting and an injunction restraining defendants from further engaging in the business of selling distributorships and prefabricated houses, and from dissipating or transferring their assets. The prayers for relief in equity are ancillary to plaintiffs' primary claim for damages for breach of contract, although the complaint does not contain a prayer for judgment on the legal cause.

Basically plaintiffs' claim may be stated as follows:

(a) Plaintiffs relying on Foundation's representations as to its plans, experience, assets and manufacturing facilities and acting in good faith paid Foundation $7200 for a contract giving them the right to act as distributor of Foundation's product—Westco Homes.

(b) Westfield as promoter and organizer of Foundation had neither the means, facilities or experience to manufacture and deliver prefabricated houses, nor did he have any reasonable expectation that Foundation would do so. On the contrary, Westfield created and intended Foundation to be a "corporate pocket" for his own aggrandizement.

(c) Foundation falsely represented to plaintiffs and others that it was able to fulfill its undertakings to manufacture and deliver prefabricated houses whereas in truth and in fact it was never able to do so.

Wherefore there was a breach of contract and plaintiffs are entitled to relief.

Defendants dispute plaintiffs' allegations. They admit receipt of plaintiffs' money; that it was paid by plaintiffs in good faith. Defendants claim that the representations to plaintiffs were made relying upon commitments of a third party (the Bethlehem Engineering Company of New York—hereafter called Bethlehem), that a factory, manufacturing facilities and working capital would be furnished in return for Foundation notes; that no distributorships were sold or contracts for the sale of houses entered into until the building of the factory was commenced at Dallas, Pennsylvania, in this district; that when Bethlehem commitments were not forthcoming a factory was obtained and production started at Elmira, New York; that results by way of production were not as expected—only several houses were manufactured and delivered— and thereafter no other contracts were entered into for distributorships or the selling of houses.

Plaintiffs contend that as a result of Westfield's activities in organizing Foundation and Foundation's false representations to the public "Foundation or Westfield or both obtained * * * in excess of $300,000." Defendants admit Foundation received $180,000 of which $28,000 was refunded when contracts could not be met as promised and the company was running into financial difficulties; that since manufacturing operations ceased Founda-

tion's sole function has been to sell its land and timber to raise funds to pay all creditors in full.

Plaintiffs charge Foundation at one time contemplated transferring some of its assets to some of its creditors without receiving fair consideration and this without the knowledge and consent of other creditors and against their interests.

Defendants answer that the plan was abandoned; that what was done was to attempt to raise sufficient money to pay off all claims with a considerable surplus remaining but that plan was not carried out.

Finally plaintiffs contend that if a creditors' race for assets develops and if defendants are not restrained from doing further business and dissipating their assets, the damage to plaintiffs and others similarly situated will be irreparable.

Defendants deny that the corporation has been dissipating its assets; contend that it has been trying to conserve them for the benefit of its creditors. Defendants aver that the corporation is solvent; that its assets consist of the factory site at Dallas, 65,500 acres of land and timber in Tennessee, and some inventory items; that it is trying to obtain a purchaser for the land and timber, the value of which is in excess of $1,000,000 and more than enough to pay all claims of creditors in full and allow for a surplus.

Finally defendants' answer objects to the naming of a receiver for the property of the corporation, and a general request is made that all of plaintiffs' prayers for relief be denied.

In addition to the complaint, defendants' answer, the argument of counsel at the hearing on the rule granted to show cause why a receiver pendente lite should not be named, the court has examined depositions of Westfield and of the Chief Accountant of Foundation offered in evidence by plaintiffs. Those depositions show total cash receipts by Foundation between November 19, 1945, and July 16, 1946, of $193,569.70, of which only $181.43 remain on December 16, 1946. There is discrepancy in the dispositions as to whether all or any part of the issued capital stock of Foundation was paid for. Apparently only three houses were actually manufactured and delivered.

The payroll during manufacturing operations was charged to have been exorbitant, and apparently manipulated by the then, and since replaced, president in the hope that the capital stock of the corporation could be purchased by him at a figure less than its true value. Westfield made assertions of special knowledge and experience in housing construction.

Altogether the picture before the court shows a series of extraordinary enthusiastic expectations or assertions thereof and meager mediocre realizations by way of accomplishments.

Many of the body politic have lost their money and their hopes of having a home of their own have been frustrated.

Our immediate problem, however, is plaintiff's claim for relief. Upon our first examination of the pleadings, in view of there being no prayer for judgment on the legal cause, plaintiffs' primary suit, our first reaction was that plaintiffs' action was based on fraud and deceit, in view of the charge of "false" representations.[1] Further reflection, however, indicates that if that was the basis of plaintiffs' claim there was failure in the complaint to comply with Rule 9(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requiring that "* * * in all averments of fraud * * * the circumstances constituting fraud * * * shall be stated with particularity. * * *"

Later plaintiffs' counsel stated in open court that plaintiffs' claim for relief in the primary suit is for damages for breach of contract; that plaintiffs have made their determination by way of election of remedies and ask to recover only the sum of $7200 or a money judgment for breach of a simple contract.[2]

---

[1] Fraud alone is not enough to warrant appointment of a receiver. United States v. Bitter Root Development Co., 1906, 200 U.S. 451, 26 S.Ct. 318, 50 L.Ed. 550; Equitable Life Assurance Soc. v. Brown, 1909, 213 U.S. 25, 44, 51, 29 S.Ct. 404, 53 L.Ed. 682. See 16 Fletcher's Cyclopedia Corporations, Perm. Ed. 1942 Rev. Vol. Section 7692.

[2] See Rule 54(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following

We are thus confronted with a request by a simple contract creditor for the appointment of a receiver of a solvent corporation over the objection of the corporation. The claim of the plaintiffs has not been reduced to judgment. Plaintiffs do not have any lien or interest in the property of defendants, their only right being their claim for breach of contract. This question has been decided by an array of United States Supreme Court decisions to the effect that such an appointment should not be made.

■ Many of the authorities could be quoted at length. We refrain from doing so and in place thereof direct attention to Scott v. Neely, 1891, 140 U.S. 106 at page 108, 11 S.Ct. 712, 35 L.Ed. 358, where the matter is discussed at length commencing from the earliest period in England, and from the early history of this country to the time of the decision.[3] Inter alia that case holds that an action which seeks to recover a money judgment for breach of a simple contract can be brought in the Federal courts only on the law side. See 7th Amendment to the Constitution and Jud. Code, § 267, 28 U.S.C.A. § 384; Cates v. Allen, 1893, 149 U.S. 451 at page 457, 13 S.Ct. 883, 37 L.Ed. 804; Hollins v. Brierfield Coal & Iron Co., 1893, 150 U.S. 371, 14 S.Ct. 127, 128, 37 L.Ed. 1113, "It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims * * *. Nor is it otherwise in case the debtor is a corporation, and an unpaid stock subscription is sought to be reached." The court holds that the insolvency of the corporation would not alter the rule. In the instant case the corporation is solvent, at least insofar as any evidence has been presented to the court.

■■ Pusey & Jones v. Hanssen, 1923, 261 U.S. 491, 497, 43 S.Ct. 454, 455, 67 L. Ed. 763, we quote at length from the opinion of Mr. Justice Brandeis:

"A receiver is often appointed upon application of a secured creditor who fears that his security will be wasted. Kountze v. Omaha Hotel Co., 107 U.S. 378, 395, 2 S.Ct. 911, 27 L.Ed. 609. A receiver is often appointed upon application of a judgment creditor who has exhausted his legal remedy. See White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67. But an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property, and although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy. After execution upon a judgment recovered at law has been returned unsatisfied, he may proceed in equity by a creditors' bill. Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113. Compare Swan Land & Cattle Co. v. Frank, 148 U.S. 603, 13 S.Ct. 691, 37 L.Ed. 577; National Tube Works Co. v. Ballou, 146 U.S. 517, 13 S.Ct. 165, 36 L.Ed. 1070; Pierce v. United States, 255 U.S. 398, 403, 41 S.Ct. 365, 65 L.Ed. 697. He may, by such a bill, remove any obstacle to satisfy his execution at law, or may reach assets equitable in their nature, or he may provisionally protect his debtor's property from misappropriation or waste, by means either of an injunction or a receiver. Whether the debtor be an individual or a corporation, the appointment of a receiver is merely an ancillary and incidental remedy. A receivership is not final relief. The appointment determines no substantive right, nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights."

Lion Bonding Co. v. Karatz, 1923, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871, holding that insolvency is not an equitable ground for appointing a receiver at the suit of a

---

section 723c; Kansas City, St. L. & C. R. Co. v. Alton R. Co., 7 Cir., 1941, 124 F.2d 780; Atwater v. North American Coal Corp., D.C., 36 F.Supp. 975;

Catanzaritti v. Bianco, D.C.M.D.Pa., 25 F.Supp. 457.

[3] See Power v. Grogan, 232 Pa. 387, at page 394, 81 A. 416.

simple contract creditor.[4]  See also Harkin v. Brundage, 1928, 276 U.S. 36, at page 52, 48 S.Ct. 268, 274, 72 L.Ed. 457, 464.

Shapiro v. Wilgus, 1932, 287 U.S. 348, at page 355, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128, opinion by Mr. Justice Cardozo: "Ordinarily a creditor who seeks the appointment of receivers must reduce his claim to judgment and exhaust his remedy at law.  The Uniform Fraudulent Conveyance Act may have relaxed that requirement in many of the states * * but the rule in the federal courts remains what it has always been.

"True indeed it is that receivers have at times been appointed even by federal courts at the suit of simple contract creditors if the defendant was willing to waive the irregularity and to consent to the decree. This is done not infrequently where the defendant is a public service corporation and the unbroken performance of its services is in furtherance of the public good. In re Metropolitan Railway Receivership, 208 U.S. [90], 109, 111, 28 S.Ct. 219, 52 L. Ed. 403.  It has been done at times, though the public good was not involved, where legitimate private interests might otherwise have suffered harm.  United States v. Butterworth-Judson Corp., 269 U.S. 504, 513, 46 S.Ct. 179, 70 L.Ed. 380; Kingsport Press v. Brief English Systems [2 Cir.], 54 F.2d 497, 500 [501] ;  Harkin v. Brundage, supra, 276 U.S. [at page] 52, 48 S.Ct. 268, 72 L.Ed. 457.  We have given warning more than once, however, that the remedy in such circumstances is not to be granted loosely, but is to be watched with jealous eyes.  Michigan v. Michigan Trust Co., 286 U.S. 334, 345, 52 S.Ct. 512, 76 L.Ed. 1136; Harkin v. Brundage, supra." Ibid at page 356 of 287 U.S., at page 144 of 53 S.Ct., 77 L.Ed. 355, 85 A.L.R. 128.

See Atlas Ins. Co. v. W. I. Southern, Inc., 1939, 306 U.S. 563, at pages 568, 569, 59 S.Ct. 657, 83 L.Ed. 987.

Guaranty Trust Co. v. York, 1945, 326 U.S. 99, at page 106, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; opinion by Mr. Justice Frankfurter.  See particularly footnote 3 at page 106 of 326 U.S., at page 1468 of 65 S.Ct., 89 L.Ed. 2079, 160 A.L.R. 1231 where the court in discussing Pusey & Jones v. Hanssen, supra, said: "* * *  Although traditional equity notions do not give a simple contract creditor an interest in the funds of an insolvent debtor, the State may, as this Court recognized, create such an interest.  * * * Delaware could not modify the traditional equity rule in the federal courts that only someone with a defined interest in the es-

[4] See Blum Bros. v. Girard Nat. Bank, 1915, 248 Pa. 148, at page 155, 93 A. 940, 942, Ann.Cas.1916D, 609: "It is too late at this day to challenge the general authority of a Pennsylvania court in equity to appoint receivers for a financially embarrassed corporation. The right to appoint receivers has belonged to courts of chancery from 'a very early time'.  Power v. Grogan, 232 Pa. 387, 394, 81 A. 416.  With us it has been uniformly exercised in cases of embarrassed corporations, and this course has had statutory authority, at least, since Act of June 16, 1836, (P.L. 789) § 13, Par. 5, [17 P.S. § 281], which confers on the courts of common pleas the supervision and control over corporations. Of course, a receiver will not be appointed or an injunction granted for the mere purpose of delaying a creditor in the pursuit of an action to recover a debt, when it is apparent that there is nothing more in the case than a desire to accomplish that end, or when no good, general purpose would be served by the interference of a court of equity; in such instances all parties are left to their ordinary remedies at law (see Pairpoint Mfg. Co. v. Philadelphia Optical & Watch Co., 161 Pa. 17, 28 A. 1003; Lowry v. Philadelphia Optical & Watch Co., 161 Pa. 123, 28 A. 1004; Bell v. Wood, 181 Pa. 175, 37 A. 201); but many of our decisions recognize the right of a court of equity, in a proper case, to appoint receivers for a financially embarrassed trading corporation and, if it proves insolvent, to distribute the assets for the benefit of creditors and others ultimately entitled thereto (see Cowan v. Penna. Plate Glass Co., infra, 184 Pa. 1, 38 A. 1075; United States Brick Co. v. Reading Shale Brick Co., supra et infra, 228 Pa. 81, 77 A. 395, and cases cited on other points in present opinion; also see Tenth Nat. Bank of Philadelphia v. Smith Construction Co., 242 Pa. 269, 89 A. 76)."

See Hogsett v. Thompson, 258 Pa. 85, at page 94, 101 A. 941; Kornfield, Aplnt. v. Mentor Building & Loan Ass'n et al., 321 Pa. 314, 184 A. 20.

tate of an insolvent person, e. g., a judgment creditor, can protect that interest through receivership. * * *"

■ For the foregoing reasons the request for the appointment of a receiver of Foundation is denied.

■ As to the request for the appointment of a receiver of Westfield, an individual, a natural person, we are confronted with a problem of equity jurisdiction.

Plaintiffs, over defendants' objection, asked for the appointment of a receiver to restrain the business conduct and to take possession of the assets of Westfield, an individual.

If one reviews the early history of equity jurisdiction in England, it will be noted that receiverships were granted in order to protect the interest of a remainderman. It will also be noted that receiverships were granted as to property held by individuals in a representative capacity, to wit, administrators and executors.

The matter was not discussed in the brief of either counsel and we have not been able, on independent investigation, to discover any case where the Federal courts have granted a receivership of property of an individual as such. There is a very interesting discussion on the possibilities of such a receivership being granted if the proper fact situation was presented to the court. See Chapter V, Clark on Receivers, 2d Ed., p. 209 et seq. The matter has been before the Federal courts on several occasions and in each instance the jurisdiction of equity to appoint a receiver of the property of an individual has been denied.

"The administration of the affairs of a solvent individual is not a recognized head of equity jurisdiction. The subject-matter is not one over which the court has jurisdiction. Mere waiver by the defendant of objections otherwise fatal to the capacity of the plaintiff to invoke such jurisdiction in the case of a corporation removes the only obstacle to the granting of the relief desired. In the case of an individual defendant, it leaves untouched the most serious difficulty of all, namely, that the subject-matter is not one within the province of the court." Citing cases. In re Richardson's Estate, D. C., 294 F. 349 at page 358.

"In its most favorable aspect the plaintiff's case comes under no recognized head of equity jurisdiction. Indeed, we take it to be an established principle of jurisprudence that a court of equity is without power, in the absence of statutory authority, to appoint a receiver of the assets of an individual debtor, or to enjoin the prosecution of claims against him, at the suit of a mere contract creditor who has no lien or other security, and who asserts no right to subject any specific property to the payment of his debt. Equity may aid in a proper case when legal remedies have been exhausted, but cannot be resorted to in the first instance." Citing cases. Davis v. Hayden, 4 Cir., 238 F. 734, at page 738.

"An individual is not a corporation. The administration of the affairs of an insolvent individual is not a recognized head of equity jurisdiction as is the administration of the assets of an insolvent corporation. The subject-matter in the former case is not one over which the court has jurisdiction." Maxwell v. McDaniels, 4 Cir., 184 F. 311, at page 316.

"It is true that a simple contract creditor cannot have a receiver appointed to take possession of the assets of an individual debtor. 1 Tardy's Smith on Receivers, 649. It is also true that such a creditor cannot have a receiver of corporation assets appointed, when the corporation resists such appointment." First Nat. Bank etc. v. Stewart Fruit Co., D.C., 17 F.2d 621, 622. See note "The Propriety of Friendly Receiverships in the Federal Courts" (1930), 43 Harv. L. Rev. 1298 at 1301.

No relief in the nature of having a receiver appointed could be obtained as to the individual defendant in the courts of Pennsylvania. Hogsett v. Thompson, 258 Pa. 85, 101 A. 941, 943, where it was held error to appoint a receiver of an individual debtor who was unable to meet his debts as they became due, the court observing, "The supervision and control of partnerships, and of corporations, are recognized heads of equity jurisdiction, but the administration of the affairs of an individual, sui juris, and compos mentis, is not." See

also 8 Standard Pennsylvania Practice, p. 488, Section 3.

■ For the foregoing reasons the request for an order for the appointment of a receiver of Westfield, an individual, is denied.

■ In view of the nature of plaintiff's claim there is no need for an accounting. United States v. Bitter Root Development Co., 1906, 200 U.S. 451, 26 S.Ct. 318, 50 L.Ed. 550. The prayer of the complaint for an accounting is therefore denied.

■ Since there is an adequate remedy at law, the prayer for an injunction is denied.

An order disposing of the plaintiff's motions for an accounting, an injunction and the appointment of a receiver as to the corporation and as to the individual will be filed forthwith.