ARTHUR FALK, Appellant, v. JACOB L. HOFFMAN and Another, Respondents.

First Department, December 12, 1919.

**Pleading — suit to rescind sale of stock alleged to have been induced by fraud — complaint not stating cause in equity — adequacy of legal remedy — complaint purporting to set forth cause in equity only — when equity will not rescind executed transaction.**

A complaint which in substance alleges that the plaintiff and defendants, being sole stockholders of a corporation engaged in the tobacco business, entered into an agreement in writing whereby each of the stockholders agreed to notify the others of any offer for the purchase of his stock with the price per share offered and name of the proposed purchaser, whereupon the other stockholders should have the prior right to purchase the shares at said price, but that the defendants fraudulently represented to the plaintiff that a certain corporation refused to purchase their stock and that they were negotiating a sale of the stock to another individual and in reliance thereon the plaintiff sold his stock to the defendants and promised not to engage in the tobacco business for five years, or to use the trade name in connection with the sale of tobacco, and that the defendants did sell the entire stock of the corporation, including that of the plaintiff, to the other corporation and thereby reaped a profit above the value of the stock belonging to the plaintiff, and that the plaintiff, on learning the falsity of the representations, offered to return the consideration received by him on restitution of the stock by the defendants, which tender he still makes, does not state a cause in equity for a rescission of the transaction and an accounting by the defendants, for the plaintiff's remedy at law is adequate.   Such complaint does not show that the title to real estate is affected by the transaction sought to be set aside, nor

allege special facts bringing the case within the equitable jurisdiction of the court.

Such complaint cannot be treated as solely for an accounting as the action is for a rescission and the relief by way of accounting is only incidental thereto.

As the plaintiff actually rescinded upon discovery of the fraud his action at law accrued and no further declaration of a rescission by judicial authority was necessary.

As the complaint purports to state a cause in equity only it must stand or fall as one in equity.

Equity will not entertain an action to declare the rescission of an executed transaction, unless a decree announcing the rescission is essential to the suitor's protection.

SMITH, J., dissented, with opinion.

APPEAL by the plaintiff, Arthur Falk, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of March, 1919, denying plaintiff's motion for judgment on the pleadings, and sustaining a demurrer to the complaint with leave to plaintiff to serve an amended complaint. And also an appeal is taken from the interlocutory judgment entered in said clerk's office on the 29th day of March, 1919, pursuant to said order.

*William Bondy,* for the appellant.

*Clarence J. Shearn* of counsel [*Gerald B. Rosenheim* with him on the brief], for the respondents.

DOWLING, J.:

The amended complaint herein, to which a demurrer has been sustained, sets forth the following facts: On April 21, 1905, the Falk Tobacco Company was organized under the laws of the State of New York with a capital stock of 500 shares of the par value of $100 each. Plaintiff, the defendant Albert Falk and their father, Moses Falk, held all the stock in said company until the death of the last named on August 19, 1913, who by his last will and testament, duly admitted to probate, left his shares of stock in the company to his two sons to be divided between them equally. Plaintiff and his brother Albert continued to hold all the stock of the company until

December 26, 1913, when they agreed to sell 60 shares apiece to defendant Hoffman, under an agreement in writing, whereby among other things it was provided that in the event that Hoffman should desire to dispose of said stock or any part thereof, or in the event of his decease, the plaintiff and the defendant Falk should have the sole and exclusive right to repurchase the same at the book value as shown on the books of the company. On February 24, 1916, plaintiff and defendants entered into an agreement in writing, modifying the original agreement by providing:

" That if at any time after December 26th, 1916, the said defendant, Jacob L. Hoffman, shall receive a *bona fide* offer for the purchase of any shares of stock of the Falk Tobacco Co., then or thereafter owned by him, he shall deliver to Arthur Falk and Albert Falk an affidavit stating that he had received such an offer, the number of shares to which the offer refers, the price per share offered and the names and addresses of the persons making the offer, and shall furnish, if requested, an affidavit by such parties to the same effect, and that within twenty days thereafter Arthur Falk and Albert Falk may deliver to the said Jacob L. Hoffman a written notice that they will, within twenty days thereafter, purchase from him the number of shares at the price stated in said affidavit, in which event Jacob .L. Hoffman shall, upon tender of payment, deliver to Arthur Falk and Albert Falk the certificates for said shares of stock endorsed by him in blank, and further that if either Arthur Falk or Albert Falk should fail to avail himself of his rights to his proportionate share of said stock, the other, if he shall so elect, shall have the right to acquire all the said shares of stock of said Jacob L. Hoffman.

" At or about the same time it was mutually agreed by the plaintiff, Arthur Falk and his brother the defendant, Albert Falk, that before either of them shall accept any offer for the purchase of any of his shares of stock of the Falk Tobacco Co., he shall give to the other, the opportunity to purchase the number to which the offer refers at the price per share offered and upon tender of payment thereof he shall deliver such shares to the other endorsed in blank."

On June 15, 1916, the authorized capital stock of the company was increased from $50,000 in common stock to a

total of $1,000,000, whereof $875,000 was in preferred stock and $125,000 in common stock, the holders of the latter alone having the right to vote. The par value of each share of common and preferred stock was $100. Albert Falk received 3,378 shares of common stock, Arthur Falk 3,272 shares (this seems to be the correct number though it sometimes appears as 3,372), and Jacob L. Hoffman 2,100 shares. Of the preferred stock, 230 shares were issued to the three persons named jointly to be held and used as they deemed most advisable to advance the interests of the business of the corporation, 500 shares to Francis M. Collier and 20 to Edward W. Dinwiddie, employees of the company, and the remaining 500 shares to be held in trust for Collier and delivered to him March 1, 1923, provided he faithfully performed all his obligations to the company up to that time under an agreement between them. From its incorporation April 21, 1905, until January 26, 1918, no stock of the Falk Tobacco Company was issued save as above stated, and the management of the company and its affa rs had been under the control of plaintiff, his brother Albert and in addition of their father during his lifetime and of Hoffman after he had acquired his stock and no one else had been the directors or officers of the company, " and they reposed the greatest trust, faith and confidences in one another." It is then alleged:

" XI. That on or about and at various times prior to January 10th, 1918, the defendants falsely and fraudulently stated and represented to the plaintiff that negotiations shortly theretofore had, between the defendants and the Tobacco Products Corporation of America for the purchase of plaintiff's stock by said company had been entirely discontinued and abandoned, that said Tobacco Products Corporation absolutely refused to purchase the same, that they were negotiating for the sale of plaintiff's stock, to an individual other than the Tobacco Products Corporation of America, that they did not intend to sell, transfer or otherwise dispose of any of the stock of said Falk Tobacco Co. then held by them, during the next ten years, and that the management, control and business of the said Falk Tobacco Co. would not be changed, but would be continued exactly as theretofore by them for at least ten years, that the defendant, Albert

Falk would continue as president and the defendant, Jacob L. Hoffman as vice president, and that in order to enable them to sell plaintiff's stock to the individual with whom they were negotiating, it would be necessary for the plaintiff to deliver to the defendant an agreement giving the defendants the right to purchase from the plaintiff his 3,272 shares of stock at par, and an agreement that he will not engage in the tobacco or cigarette business for at least five years and that he will not use the name Falk in connection with the manufacture or sale of tobacco or cigarettes, and further falsely and fraudulently stated and represented to the plaintiff that they are acting for the sole benefit of the plaintiff in the sale thereof and were not making any profit nor deriving any advantage out of the negotiations or the sale of the plaintiff's stock to such third person, and that they would pay to the plaintiff the entire consideration received by them for the same."

Plaintiff relied upon these representations and believing them to be true was induced to sign an agreement in writing giving defendants the right to purchase his 3,272 shares of common stock at par, and also an agreement in writing whereby plaintiff agreed in case of such sale of his stock not to engage in the tobacco or cigarette business for a period of five years and not to use the name Falk in connection with the sale or manufacture of tobacco or cigarettes, and was also induced thereby to accept $327,200 for his stock, and upon receipt thereof indorsed in blank the transfer as the certificate for such shares, and for all the preferred stock of the company in which he had any interest, and delivered the same so indorsed to defendants. It is then averred that the representations were false and known so to be by defendants, who made them with the intent to deceive and defraud plaintiff and to induce him to give the agreements aforesaid and to deliver the indorsed certificates of stock. It is then alleged:

" That at the time said representations were being made by the defendants to the plaintiff the defendants did intend to sell all their stocks as well as all plaintiff's stock to the said Tobacco Products Corporation of America and did intend to make a profit and derive an advantage out of the sale thereof, and did intend to part with the management and control of said Falk Tobacco Co., and actually were

negotiating with the said Tobacco Products Corporation of America not only for the sale of all plaintiff's stock but all the stock of said Falk Tobacco Co., including all defendants as well as all plaintiff's stock, and were negotiating for passing the control of said Falk Tobacco Co. to the said Tobacco Products Corporation and were negotiating for and receiving an advantage and more than par per share for the common stock of said Falk Tobacco Co. belonging to the plaintiff as well as the stock of defendants."

Plaintiff claims to have been informed of the falsity of the representations on or about April 23, 1918, and he then immediately offered to return the consideration received by him for said stock upon restitution being made to him by defendants, " and informed the defendants that unless restitution is made plaintiff would bring an action for the relief to which he deemed himself entitled, and plaintiff hereby offers to return all the consideration received by him for his said stock." It is also averred that " all the stock issued by the Falk Tobacco Co., including plaintiff's stock has been transferred to the said Tobacco Products Corporation by the defendants for valuable consideration consisting of securities and cash paid to the defendants, and that the business of said Falk Tobacco Co. was discontinued after the transfer of plaintiff's stock to the defendants."

The plaintiff demands judgment against defendants rescinding the agreement dated the 5th day of January, 1918, giving the defendants the option to purchase 3,272 shares of plaintiff's stock and plaintiff's agreement dated the 15th day of January, 1918, not to engage in the tobacco or cigarette business for the period of five years and not to use the name Falk in connection therewith, and that the sale and transfer of said 3,272 shares of plaintiff's common stock of said Falk Tobacco Company, and of the plaintiff's interest in 230 shares of the said preferred stock of the said Falk Tobacco Company, issued jointly to the plaintiff and the defendants, be rescinded and set aside, and that the defendants account to the plaintiff for the proceeds of said stock and all profits derived therefrom and for such other or further relief as may be just, besides the costs of this action.

It will be seen upon an examination of the allegations of

the complaint that the plaintiff seeks to rescind a transaction between him and the defendants which has been entirely executed. The rule applicable to cases of this kind was thus laid down by Judge CARDOZO in *Schank* v. *Schuchman* (212 N. Y. 352): " They also recast their prayer for relief by demanding a decree of rescission; and the semblance of an action in equity rather than one at law has thus been given to their pleading. We speak of its form in that regard as a semblance, for we think it is nothing more. The plaintiffs seem to have tried to make out a right of action in equity; but whatever rights they have, we think are purely legal. They do not need at this time the aid of equity. * * * Equity will not entertain an action to declare the rescission of an executed transaction unless a decree announcing the rescission is essential to the suitor's protection. This necessity may arise from the fact that the transaction, if left apparently outstanding, would affect the title to real estate. It may arise where the defrauded party has been induced to become a stockholder in a corporation, so that there is need, not merely to recover what was paid for the shares, but also to sever relations with other stockholders and creditors (*Bosley* v. *Nat. Machine Co.*, 123 N. Y. 550, 555). It may arise, under a great variety of other conditions, where the transaction in one or more of its elements is still executory (*Davis* v. *Rosenzweig Realty Operating Co.*, 192 N. Y. 128, 133). If, however, nothing executory remains, an action to declare a rescission, even though fraud is proved, does not lie as of course. ' It is not in every case of fraud that relief is to be administered in a court of equity, and it is a well-settled rule that wherever a matter respects only a sale of personal chattels, and lies merely in damages, the remedy is at law only. If this had been a sale of a horse to the plaintiff procured by fraud, it would not have been proper for her to resort to an equitable action for relief, because an action at law would furnish her an ample remedy, and give her all the relief to which she could, under any circumstances, be entitled '. (*Bosley* v. *Nat. Machine Co.*, *supra; Buzard* v. *Houston*, 119 U. S. 347, 352). In the case at hand, the transactions have been fully executed. The plaintiffs are simply seeking to get back a sum of money paid under a contract, not affecting real estate, which they have

elected to declare a nullity. To render that relief effective, it is not required that a court of equity should anathematize the closed transactions. The cause of action is at law, and the legal remedy is adequate (*Bosley* v. *Nat. Machine Co., supra; U. S.* v. *Bitter Root Dev. Co.,* 200 U. S. 451; *Equitable Life Assurance Society* v. *Brown,* 213 U. S. 25, 50; *Curriden* v. *Middleton,* 232 U. S. 633)."

In the case at bar there is no allegation that the title to any real estate is affected by the transaction sought to be set aside; no special facts are alleged bringing the case within the equitable jurisdiction of the court; there is no contention that defendants are not able to respond in damages in an appropriate action at law; there is no suggestion of any reason why plaintiff could not himself have rescinded the agreement, if procured by fraud, instead of asking the court to do so; it is not claimed that the stock itself can be recovered back from the ultimate vendees; if plaintiff is concerned about his agreement not to engage in the tobacco or cigarette business for five years, he can set up the defense that his promise was secured by fraud, if it is ever sought to prevent him from engaging or continuing therein. In fine, there is not a single allegation in this complaint which shows that the interposition of a court of equity is required to safeguard plaintiff's rights, or that its jurisdiction should be exercised; for aught that appears plaintiff has a complete and adequate remedy at law.

Nor can this complaint be treated as one solely for an accounting. It is an action for a rescission, and the relief by way of accounting is only incidental thereto, and does not of itself constitute a ground for equitable relief.

Upon the allegations of the complaint, plaintiff exercised his right to rescind immediately upon discovery of the fraud, and his action at law then accrued. No further declaration of a rescission by judicial authority was necessary.

This being concededly an action in equity, and plaintiff claiming that he alleges facts which are sufficient to constitute a cause of action in equity, and which clearly show that the plaintiff has no adequate remedy at law, the complaint must stand or fall as one in equity. Tested by the rule heretofore announced by the Court of Appeals, the complaint does not state a cause of action in equity and the judgment appealed

from will, therefore, be affirmed, with costs, with leave to the plaintiff to serve an amended complaint upon payment of costs in this court and in the court below.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

The plaintiff and the two defendants were the owners of all the stock of the Falk Tobacco Company. Apparently the two defendants were active in the management of the company, while the plaintiff was not. There had been negotiations for the sale of all of this stock to the Tobacco Products Corporation. One of the defendants was the plaintiff's brother and the other an old employee who had been taken into the business, in both of whom the plaintiff had full confidence. The defendants falsely represented to the plaintiff that the sale to the Tobacco Products Corporation had fallen through and that the negotiations had ceased, but that there was another customer in view, and that in order to consummate their sale to this other customer it would be necessary for the plaintiff to give to the defendants an option for the purchase of his 3,272 shares of stock at par and also an agreement that he would not engage in the tobacco and cigarette business for at least five years and that he would not use the name of Falk in connection with the manufacture or sale of tobacco or cigarettes. They further represented to the plaintiff that they were acting for the benefit of the plaintiff in the sale thereof and were not making any profit nor deriving any advantage out of the negotiations or the sale of said stock, and that they would pay to the plaintiff the entire consideration received by them for the same. Thereupon the plaintiff gave to the defendants an option to purchase his stock at par and an agreement not to engage in the manufacture or sale of tobacco for five years, nor to use the name of Falk in connection with the manufacture or sale of tobacco or cigarettes. The plaintiff then alleges that these representations by the defendants were false and untrue, that the negotiations with the Tobacco Products Corporation had not fallen through and that they intended at all times to sell the stock to the

Tobacco Products Corporation, and finally did effect such sale at a price above par, for which *they had received cash and securities,* and that they refused to account to the plaintiff for the excess price above the par value that they had received for the stock. Plaintiff then asks as relief that the option agreement to sell the stock at par be rescinded and that the agreement not to engage in the tobacco or cigarette business for a period of five years be rescinded, and that the defendants account to the plaintiff for the proceeds of said stock and all profits derived therefrom, and for such other and further relief as might be just. The defendants have demurred on the ground that the allegations do not state facts sufficient to constitute a cause of action. The case is here on appeal from a judgment sustaining the demurrer.

Upon his complaint I think the plaintiff is entitled to equitable relief.

*First.* He is entitled to the rescission of the contract of January fifteenth, not to engage in the tobacco business for five years under the name of Falk. He does not allege that that contract has been assigned to the Tobacco Products Corporation which purchased this stock, and in the absence of such assignment the agreement having been obtained by fraud, he would seem to me clearly entitled to a rescission thereof. This contract was obtained from plaintiff in order to make a sale to a third party. It is no answer to say that he may proceed to sell and await an action for an injunction or damages, and then assert his defense. The case is materially different from the case of a promissory note obtained by fraud where the maker may await an action thereupon and set up his fraud in defense. To engage in the tobacco business involves possibly an association with other parties and more or less of an expenditure of money only to find if that contract has been assigned to a *bona fide* purchaser of the stock that he is liable in damages for a violation thereof. This is clearly not such a contract as requires him to await an action for its breach. The very existence of the contract would embarrass him in forming relations with other parties for the manufacture and sale of tobacco under the Falk name, and plaintiff is entitled to its rescission, if it has not been assigned to a *bona fide* purchaser of the stock from the defendants.

*Second.* I think the plaintiff is entitled to further equitable relief. Between these parties there existed a relation of trust and confidence; not only did they represent to him that the contemplated sale to the Tobacco Products Corporation had fallen through, but they also represented that to effect any sale he should give an option agreement to sell at par. This was given upon their assurance that they were acting in his behalf, without any advantage to themselves, and upon a promise to pay any sum above par which they might receive for the stock. The complaint here alleges that the stock was sold to the Tobacco Products Corporation, including plaintiff's stock, for a valuable consideration *consisting of securities and cash* paid to the defendants. To my mind the plaintiff upon these facts is entitled to a decree declaring a constructive trust in the moneys and securities received by the defendants upon the sale of this stock. Plaintiff is not seeking to get back the stock. He has not made the vendees parties to this action and has alleged that they hold for a valuable consideration.

That the plaintiff has not an adequate remedy at law for the relief to which he is entitled seems to me to be apparent from the facts stated. In an action at law he can only recover the value of his stock in excess of the par value received for it, but he is entitled to more than that. He is entitled, if there be a constructive trust, to his share of the profits received over and above the par value. If those profits were received as alleged in the complaint in moneys and securities, he is, therefore, clearly entitled to an action in equity, first to declare the trust and, incidental thereto, to an accounting of the profits received. The learned counsel for the respondent recognizes the right of the plaintiff to recover the excess over the par value received by the defendants from the sale, and says that the plaintiff may elect whether he will take them or take the value of his goods. I have never read in an action at law or for fraud that the plaintiff may elect as to his measure of damage. His right of an election comes before he has brought the action, whether he should proceed at law for damages under a fixed and unvarying rule of damages, or proceed in equity to declare a trust and for an accounting of the profits received. These views seem to me to be sustained by

the cases of *Schafuss* v. *Betts* (94 Misc. Rep. 463; affd., 175 App. Div. 893); *Hammond* v. *Pennock* (61 N. Y. 145); *American Sugar Refining Company* v. *Fancher* (145 id. 552); *McManus* v. *Durant* (168 App. Div. 643). In the case of *Schank* v. *Schuchman* (212 N. Y. 356), which is strongly relied upon by the respondents, in reference to the facts of that case it is said: " They do not need at this time the aid of equity. There is nothing at this time for equity to undo. *There is no trust to be impressed; no accounting to be decreed; no fiduciary relation to be declared.*" Defendants' counsel in the brief says that plaintiff was not asked to impress a trust on the moneys and securities received for the sale of the stock. But that is the whole purpose of his action and need not be specifically asked.

If I am right in my view of the questions here presented, the plaintiff's complaint is not objectionable to a demurrer that no cause of action is stated.

Judgment and order affirmed, with costs, with leave to plaintiff to serve an amended complaint on payment of costs in this court and in the court below.